# Barriere *v.* The State.

*Petition for Habeas Corpus.*

1. *Extradition; habeas corpus; what can be shown on hearing.*— Where in compliance with a writ of extradition from the Governor of another State, a prisoner alleged to be a fugitive from justice in this State, is arrested under a warrant issued by the Governor, and upon such arrest seeks to be discharged from custody under a writ of *habeas corpus*, although the return to the writ of *habeas corpus* makes out a prima facie case, and the prisoner cannot require the court before whom the *habeas corpus* is heard to inquire into the merits of the crime charged, it is permissible for him to show that he is not a fugitive from justice, or that the process is void; and if the indictment or affidavit, which is the basis of the extradition charges no crime under the laws of the demanding State, he should be permitted to establish that fact.

Appeal from the Order of the Judge of the City Court of Montgomery.

Heard before the Hon. William H. Thomas.

On the 20th day of May, 1904, the governor of Louisiana issued a requisition upon the governor of the State of Alabama, commanding that E. Percy Barriere, the appellant in this case, be apprehended and turned over to a certain named person as the duly authorized agent of the State of Louisiana; it being recited in the requisition that the said Barriere was charged with the crime of deserting his wife and minor child, and was a fugitive from justice from the State of Louisiana. and had taken refuge in the State of Alabama.　In compliance with this requisition the governor of Alabama issued a warrant for the arrest of the said Barriere and commanding that the officer so arresting him deliver him into the custody of the named authorized agent of the State of

[Barriere v. The State.]

Louisiana. Upon the said Barriere being arrested under said warrant issued by the governor, he filed the petition in this case, addressed to the Hon. William H. Thomas, associate judge of the city court of Montgomery, asking for the issuance of a writ of *habeas corpus,* and that upon the hearing of said writ the petitioner be discharged from custody.

The first four paragraphs of the petition for *habeas corpus* were as follows: "To the Honorable William H. Thomas, Associate Judge of the City Court of Montgomery: Your petitioner, E. Percy Barriere, would respectfully represent unto your honor that he is imprisoned by Thomas J. Roche as a special agent of the State of Louisiana, and that the cause of his detention is on account of a warrant issued by R. M. Cunningham, Governor of Alabama, Lieutenant-Governor acting, upon a requisition issued from the governor of Louisiana for desertion of family, and is held by virtue of a governor's warrant, a copy of which is in the possession of defendant, a copy of which is hereto attached and made a part hereof, and marked Exhibit "A." 1st. Your petitioner is illegally restrained of his liberty, because the jurisdiction of your court issuing the warrant against him is not authorizzed by law and has been exceeded as to matter, or place, or person. 2d. The process of which your petitioner is held is void in consequence of the defects in the matters therein contained, and in the substance thereof, as required by law. 3d. The process was issued in a case and under circumstances not allowed by law. 4th. The process is not authorized by any judgment, order, decree, or any provision of the law." It was further averred in said petition that the petitioner was not a resident citizen of the State of Louisiana, but resided in the State of Mississippi; that the criminal proceedings instituted against him in the State of Louisiana were fictitious; that he had not deserted his wife and child, but that his wife had abandoned him, and had sought a divorce, and that the purpose of the criminal proceeding, which was the basis of the extradition, was for the purpose of securing service upon him in a divorce suit filed against him by his said wife, and

that he was not a fugitive from justice. The respondent demurred to the petition upon the following grounds: 1. That it is not a ground for discharge; that it seeks to inquire into the jurisdiction of the court issuing a warrant in Louisiana. 2. That it is frivolous. 3. That it seeks to have a foreign court jurisdiction inquired into by the associate judge of the city court of Montgomery. 4. That the petition on its face shows that the petitioner was held under and by virtue of a warrant issued by R. M. Cunningham, Lieutenant-Governor, acting as governor of Alabama. 5. There is no power to go behind the affidavit and warrant issued by the court in Louisiana. This demurrer was sustained. To this ruling the petitioner excepted.

On the hearing of the cause the judge of the city court denied the relief sought by the petitioner, and from the order denying the relief, petitioner prosecutes the present appeal. In the order of the judge upon the hearing of said cause he requires the petitioner to give bail and fixed the amount thereof.

PEARSON & RICHARDSON and E H. McCALEB, for petitioner.—Cited *Ex parte Reggel*, 114 U. S. 651; *Roberts v. Reilly*, 116 U. S. 80, 95; *Ex parte State in re Mohr*, 73 Ala. 503; Spear on Extradition, pp. 349, 351, 352, 353; *Ex parte Slausson*, 73 Fed. Rep. 666.

MASSEY WILSON, Attorney-General, and HILL, HILL & WHITING, for the State.—If appellant is charged with a misdemeanor under the laws of the demanding State, he may be extradited.—*Kentucky v. Dennison*, 24 Hon. 66; *Brown's case*, 112 Mass. 409; *Taylor v. Tainter*, 16 Wal. 366; *Com. v. Green*, 17 Mass. 515.

The record shows that appellant has been in Louisiana since the offense is alleged to have been committed, (Record, pp. 35 and 36). That makes him a fugitive from the demanding State.—*In re Mohr*, 73 Ala. 503, 513. Clearly the burden is on appellant to show he was not in Louisiana when the crime was committed or since. No evidence is found in the record showing his absence from the State at that time.—*In re Mohr*, 75 Ala. 511.

[Barriere v. The State.]

The Supreme Court of the United States held that it was no objection to the right of the authorities of Alabama to remove from Texas a person there charged with crime in Alabama, because the indictment did not charge that the offense was committed in Alabama, or for other defects in the indictment, that these questions should be left to the courts of the demanding State.—*Peerce v. Texas,* 155 U. S. 311.

The affidavits are not required to charge the offense with the same particularity that indictments are. *Pierce v. Sheriff,* 43 La. Ann. 859; *State v. Arledge,* 48 La. Ann. 776; *Brazleton v. State,* 66 Ala. 96.

All cases not capital may be prosecuted in Louisiana by information.—Revised Laws of La. (Wolff), § 977, p. 258.

ANDERSON, J.—"The writ of *habeas corpus* is extolled by Blackstone as another Magna Charta of civil liberty. It is the most celebrated writ of English-speaking peoples. It is the process provided by law from deliverence from illegal confinement. The writ has no respect for persons. It lends itself to the humblest human being, and questions and enquires into the actions of the most exalted persons in the community and most powerful officers of government.

"In regard to extradition, this writ is indicated by the law itself as the special remedy available to the citizen against the misuse and abuse of that proceeding. Requisitions for persons stigmatized as fugitives from justice, when issued, as in the case at bar, on mere *ex parte* affidavit, and not founded upon indictment, are liable to abuse. Little care can be taken to obtain the real facts of the case by the officers issuing a requisition. Papers are prepared and the demand issued, often in the most perfunctory manner; and it is impracticable for the governor, to whom the requisition is addressed, to enquire into the merits of the proceeding. The questions based upon affidavit are issued only in sudden emergencies, rarely after as much as four months of deliberation. The law provides for no hearing to the alleged fugitive before the executives of the two States, and seem to rec-

ognize the fact that he has no redress except in this writ of high privilege,—this writ of *habeas corpus*."—*Ex parte Slauson,* 73 Fed. Rep. 667.

The judge of the city court had the authority to issue the writ of *habeas corpus,* and to review the proceedings under which the petitioner was held. "The act of the governor can be reviewed, and, if he has not followed the directions and observed the conditions of the Constitution and laws of the United States, pertinent to such matters, can be set aside as void. The highest as well as the most obscure official must respect the requirements of the constitution and the laws made thereunder. The acts of the executive are subject to review by the courts by means of the writ of *habeas corpus.* It is not now necessary to cite authorities on this question, nor to recall incidents in English history, showing that this writ will issue, no matter how obscure the prisoner, nor how great the power of the official who detains him."*Ex parte Hart,* 11 C. C. A. 176-7.

The relief sought has been denied by the judge of the city court, and the petitioner has a clear right to appeal to this court.—§ 4314 of the Code of 1896. Not only does said section give the petitioner the right of appeal, but gives the State the same right in similar cases whenever the petitioner is discharged on the original hearing.

"Interstate extradition is regulated by law. No such power can ever be exercised by the chief executive of a State on the ground of comity.—Rorer, Interstate Law, 225. Nor has it ever been, in this county, properly and legally exercised on such ground. Comity may and does afford a strong reason for the enactment of laws providing for the extradition of criminals, that they may be brought to justice, and society be thus protected. But we must look to the law for the right to exercise this extraordinary power. Even before our present form of government came into existence we find a number of the colonial plantations entering into a *compact* in the nature of a treaty for the extradition of fugitive criminals. If it could be done upon comity alone why enter into a compact. As early as 1643 the plantations under the

[Barriere v. The State.]

government of Massachusetts, the plantations under the government of New Plymouth, the plantations under the government of Connecticut and the government of New Haven, and the plantations in combination therewith, pledged themselves to each other to render to the colony from which he escaped, the fugitive from justice, and they described the means to be employed in such rendition.—*Kentucky v. Dennison,* 24 How. 66; Winthrop's Hist. Mass. 121, 126. A similar compact was entered into by the American colonies when they organized themselves under the articles of confederation and assumed the title of 'The United States of America.' The fourth of these articles provided that if 'any person, guilty or charged with treason, felony, or other high misdemeanor in any State, shall flee from justice and be found in any of the United States, he shall, upon demand of the governor or executive power of the State from which he fled, be delivered up and be delivered to the State having jurisdiction of his offense.' This article of the confederation was one of the principles of the 'firm league of friendship and perpetual union' that the then acting as sovereign and independent States established. The reasons of the creation of this power were public policy and public peace and public justice. But the reasons for the creation of a power are not the power, but they can only be used as a means of ascertaining what the created power is. The power under the articles of confederation is to be found in the fourth of these articles. The same power was incorporated into the constitution of the United States. The second section of the fourth article is as follows:

" 'A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime.'

"On the 12th of February, 1793, congress passed an act respecting fugitives from justice, and persons escaping from the service of their masters. The first section of this act is substantially reproduced in section 5278 of

[Barriere v. The State.]

the Revised Statutes of the United States, and is as follows:

" 'Wherever the executive authority of any *State or Territory* demands any person, as a fugitive from justice, of the executive authority of any State or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, *certified as authentic* by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear,' etc.

"We are able to see by this history of the method of extradition among the colonies and States that almost from the first organization of civil society in this country it has been regulated, as to the right of and the method of the exercise of the right, by law. Those who founded the colonies came from countries where personal liberty was not at that time very secure, and they were, therefore, extremely jealous of the discretionary power founded upon comity or anything else affecting the liberty of the citizen. Hence they sought early in our history to provide by positive enactment, in the shape of compact or laws, in what case and in what manner the citzen shall be restrained of his liberty." *Ex parte Morgan,* 20 Federal Reporter, 301-2.

In the case at bar the governor of Louisiana attaches a copy of the affidavit, thereby attempting a compliance with the Federal statute. He also refers to "Act No. 34, 1902" of the State of Louisiana, as setting forth and defining the crime with which the petitioner is charged.

It may be considered as settled law, that a *prima facie* case, that the prisoner is legally held, is made out, when the return to the writ of *habeas corpus* shows: (1) "A

demand or requisition for the prisoner made by the executive of another state, from which he is alleged to have fled; (2) a copy of the indictment found or affidavit made before a magistrate, charging the alleged fugitive with the commission of the crime, *certified* as authentic by the executive of the state making the demand; (3) the warrant of the governor authorizing the arrest." When these facts are made to appear by papers regular on their face, there is a weight of authority holding that the prisoner is *prima facie* under legal restraint.—*Ex parte State v. Mohr*, 73 Ala. 503; Spears Law of Extrad. 208, 303; *Matter of Clark*, 9 Wend. 212; *State v. Schlem*, 4 Harring, 577; *People v. Brady*, 56 N. Y. 182.

Although the return makes out a *prima facie* case and the prisoner cannot require the courts of the state in which he is arrested to inquire into the merits of the crime charged, he is permitted under the law to show that he is not a fugitive and can show that the process is void. And if the indictment or affidavit charges no crime under the laws of the demanding state, he should be permitted to establish that fact.—*Ex parte State v. Mohr, supra.*

"By the act of congress the affidavit upon which the requisition is based must be set out. This wise provision is to prevent the restraint of liberty by false charge and fraudulent papers; to enable the executive, upon whom the demand is made, to determine whether there is probable cause for believing a crime has been committed."

"The affidavit, when this form of evidence is adopted, must be so explicit and certain, that if it were laid before a magistrate, it would justify him in committing the accused to answer the charge." Hurd on Habeas Corpus, 611.

In the case at bar we can only presume that the affidadavit charges the petitioner with the commission of a crime, as the act under which it is made is not before us. The bill of exceptions recites that the act was offered in connection with the objections of the petitioner to the introduction of the return, etc., but as it is not set out in the bill of exceptions, we are unable to consider it. This court cannot take judicial knowledge of the statutes of another state.

As the petitioner had the right to show that he was illegally restrained of his liberty, and to show that the process under which he was detained was illegal and void; the judge of the city court prevented his doing so by sustaining the demurrers to paragraphs 1, 2, 3 and 4 of the petition and erred in so doing.

Reversed and remanded.

McClellan, C. J., Tyson and Simpson, J. J., concurring.