No. 32,994

In re C. B. FALER, Petitioner, for Writ of Habeas Corpus.

No. 32,995

In re L. C. LANEY, Petitioner, for Writ of Habeas Corpus.

(58 P. 2d 1119)

Opinion filed July 3, 1936.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the petitioners.

*Richard Becker,* county attorney of Montgomery county, *D. M. Batenfield,* county attorney of Rogers county, Oklahoma, and *Kight & Kight,* of Claremore, Okla., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These consolidated appeals are from judgments of the district court of Montgomery county which denied writs of habeas corpus applied for by the petitioners.

The material facts are these:

On December 21, 1935, one Thad E. Hummell swore to a complaint before E. J. Humphrey, a justice of the peace in Rogers county, Oklahoma, in which it was charged that on· or about September 17, 1935, in Rogers county, Oklahoma, these petitioners, Laney and Faler, willfully and feloniously and by false and fraudulent representations did obtain 50 shares of Cities Service preferred stock of the value of $5,000 from one Sadie L. Hummell; that one of

such false representations was that petitioners were the owners of a certain oil and gas lease in Blanco county, Texas, and another such false representation was that an oil well had been drilled thereon, but in truth and fact petitioners were not the owners of the oil and gas lease nor had any oil well been drilled thereon. On the same day, December 21, 1935, a warrant for the arrest of the petitioners was issued by the justice of the peace pursuant to the aforementioned complaint.

On February 22, 1936, the petitioners were arrested in Montgomery county, Kansas, on a fugitive warrant issued under authority of R. S. 62-701 *et seq.*

On February 25, 1936, a requisition in due form, executed by the governor of Oklahoma for the extradition of one of these petitioners, L. C. Laney, was presented to the governor of Kansas. To this requisition were attached the usual accompanying documents — a certified copy of the complaint and of the warrant issued thereon by the justice of the peace of Rogers county, Oklahoma, together with the proper authentication of his official character, and of the other officials of Oklahoma who had to do with supplying the pertinent documents, all in conformity with the pertinent act of congress and the Kansas statute. The governor of Oklahoma appointed Russell Forsythe as agent to receive the petitioner and to bring him into that state when the requisition should be honored by the governor of Kansas. The requisition and its accompanying documents were submitted by the governor of Kansas to the attorney general of this state, and that officer reported to and advised (R. S. 75-704) the governor that the documents were in due and regular form. Following that advice the governor announced that the requisition would be honored, but that his warrant for the delivery of the petitioner to the agent of the state of Oklahoma would be withheld for three days, until February 29, 1936, to give the petitioner Laney an opportunity to institute proceedings in habeas corpus.

Accordingly, on February 29, 1936, these habeas corpus proceedings were instituted in the district court of Montgomery county. Requisition proceedings had not been undertaken for the interstate rendition of the second petitioner, Faler; but he, like Laney, was held in Montgomery county under a fugitive warrant, and it was agreed between counsel for the litigants, with the trial court's approval, that the decision in Faler's case should follow that rendered in Laney's case.

The trial court heard the cause on the documentary evidence, and upon some sort of showing that Sadie L. Hummell, who, it was alleged in the complaint upon which criminal proceedings had been instituted before the justice of the peace in Rogers county, Oklahoma, had appeared in the office of the governor of Kansas at the time the requisition of the governor of Oklahoma for the rendition of Laney was under consideration, and that she there advised the governor's executive clerk and pardon attorney (whether under oath or not is not clear and is immaterial) that these petitioners did not represent to her that the oil and gas lease for which she exchanged her Cities Service preferred stock was the property of the petitioners and that they did not represent to her that there was an oil well on the lease for which she traded her stock.

The trial court declined to discharge the petitioners on the writs of habeas corpus, and remanded them to the custody of the sheriff for delivery to Russell Forsythe, agent of the state of Oklahoma.

Petitioners appeal.

The requisition and accompanying papers being in due form, approved by the attorney general, and honored by the governor of this state, it is difficult to discern why the public authorities of Oklahoma should be hindered by habeas corpus proceedings and the delay of an appeal before the petitioners are returned to that state to answer the criminal charge there lodged against them. (18 U. S. C. A., § 662; R. S. 62-701 *et seq.*)

The single question counsel for the petitioners now raise is based on this situation: The gist of the criminal charge is that by the false and fraudulent pretenses that they owned an oil and gas lease in Texas and that there was an oil well thereon, the petitioners induced Sadie L. Hummell to part with her valuable Cities Service stock, when neither of these representations was true. The criminal complaint was sworn to by Thad E. Hummell, a son of the woman thus alleged to have been defrauded. It is now alleged that Sadie "testified" before the executive clerk and pardon attorney of the governor of Kansas that these petitioners did not represent to her that an oil well had been drilled on the oil and gas lease, and that one of the petitioners actually did own a one-fourth interest in the lease which was the subject matter of the transaction. Passing the question whether such "testimony" given before the governor's executive clerk and pardon attorney would have any efficacy under any circumstances, and giving to it the largest pos-

sible significance, it only amounts to the likelihood or possibility that in the criminal trial—too long delayed—Sadie will be a valuable witness for the defense. Her testimony or asseverations of whatever sort that she was not swindled as charged in the complaint have not the slightest legal effect upon the validity of that complaint nor on the validity and regularity of the requisition which was issued by the governor of Oklahoma and honored by the governor of Kansas. Sadie L. Hummell is not even the prosecuting witness in this case. But if she were it would not vitiate the requisition. It is nothing uncommon for prosecuting witnesses to swear to one state of facts and later to repudiate their testimony, or forget, or equivocate, in order to show leniency toward those against whom the solemn machinery of the law has been set in motion. Our reports are laden with familiar instances of that sort. (*State v. Taylor*, 119 Kan. 260, 237 Pac. 1053; *State v. Bell*, 121 Kan. 866, 868, 250 Pac. 281; *State v. Pitts*, 126 Kan. 784, 271 Pac. 296.)

It is said that a writ of habeas corpus should be granted whenever there is no testimony to show that the party arrested is probably guilty of the crime charged. But here there was testimony. There were the recitals of the criminal complaint, positively sworn to before the justice of the peace. The verified complaint served the purpose of showing that a crime had been committed and that the accused were probably the guilty parties. (*Matter of Strauss*, 197 U. S. 324, 25 S. Ct. 535, 49 L. Ed. 774.) See, also, Notes on Decisions in 18 U. S. C. A., pp. 295 *et seq.* Furthermore, it is perfectly clear, as shown in this record and by examination of the files of the governor's office, that the requisition for L. C. Laney was regular in all respects; and neither the district court nor this court should lend itself to any proceedings which interfere with the orderly and statutory processes prescribed for the interstate rendition of fugitives from justice. (*In re Martin*, 142 Kan. 907, and citations 52 P. 2d 1196.) In *In re Flack*, 88 Kan. 616, 635, 129 Pac. 541, this court said:

"A charge of crime, flight, discovery, and a formal demand for return are all that are necessary to raise the obligation to deliver up the fugitive, and that obligation is imperative. The act of congress passed to execute the provisions of the constitution is in full harmony with the spirit of that instrument. The duty to cause the fugitive to be arrested and delivered is imposed upon the executive authority of the state to which he has fled, without any of the reservations and restrictions imposed by other provisions of the act

upon international extradition, to the end that state boundaries shall no longer act as barriers to the administration of justice." (p. 635.)

The judgment is affirmed, and the court orders that the mandate pertaining thereto shall issue forthwith.