41 So.2d 276

## TINGLEY v. STATE.

### 6 Div: 813.

Court of Appeals of Alabama.
March 22, 1949.

Rehearing Denied April 12, 1949.

H. L. Anderton, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

**CARR, Judge.**

In the court below the petitioner's writ of habeas corpus was denied. This is the second appeal in this cause. 37 So.2d 678.[1]

On the former appeal we reversed the judgment of the court below and remanded the cause. We held that the trial judge fell into error by disallowing the petitioner the right to make proof, if he could, that the extradition proceedings were instituted for the purpose of collecting a civil demand. Title 15, Sec. 68, Code 1940. After remandment and on retrial this privilege was afforded. The writ was denied, however, and the petitioner again brings this appeal.

In view of our former pronouncements, it is only necessary that we now determine support the petitioner's contention that he has been denied the rights of the pro- whether or not the evidence is sufficient to tective provisions of the statute supra.

In approaching the question we must recognize that we are not here concerned with the inquiry of whether or not the accused is guilty of the crime alleged to have been committed in the demanding state. State v. Shelton, 30 Ala.App. 484, 8 So.2d 216; Thacker v. State, 20 Ala.App. 302, 101 So. 636; State v. Curry, 2 Ala. App. 251, 56 So. 736; Ex parte Fritz, 137 N.J.Eq. 185, 44 A.2d 414.

The warrant for the arrest of the petitioner was issued under the authority of Sections 484, 487, and 489 of the Penal Code of the State of California. The pertinent part of Section 484 is:

"Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

The warrant was based on an affidavit of Robert G. Johnston, a special investigator out of the office of the district attorney in the demanding state. It appears that this same person was designated by the governor of that state as his agent to receive the petitioner and transport him back to California. The first count or paragraph of this affidavit is:

"That on or about the 14th day of January, 1947, at and in the county of Los Angeles, State of California, the crime of Grand Theft, a felony, was committed by Jerry Clements and Harold Tingley who, at the time and place last aforesaid, did wilfully, unlawfully and feloniously take One Thousand Three Hundred Dollars ($1300.00) in money, lawful money of the United States, the personal property of Shirley Mae Bush."

There follow forty-seven additional counts in which similar complaints are made, with the exception that the sums of money vary in amounts and different persons are named as owners thereof.

The application for requisition contained among its papers two supporting affidavits. These, along with the other documents, were introduced in evidence at the trial from which this appeal originated.

It is contended that the court should not have allowed these affidavits in evidence. We cannot sustain this position. They were annexed to the application for requisition and became a part of the documents to which the Governor of California

---

1. Ante, p. 145.

certified. In this state of the record, their admissibility was authorized. People ex rel. Gates v. Mulcahy, Sheriff, 392 Ill. 498, 65 N.E.2d 21.

We copy here one of the affidavits:

"State of California }
County of Los Angeles } ss.

"Personally appeared before me this 1st day of December, 1947, Frank B. Jemison, of the county of Los Angeles, state of California, who, being duly sworn, on oath deposes and says:

"That he is over the age of twenty-one years; that he resides in the county of Los Angeles, said state; that by occupation he is an Investigator in the office of the District Attorney of said county of Los Angeles, and a Deputy Sheriff of said county and state;

"That during the months of May and June, 1947, numerous reports were made to the District Attorney, and affiant and his fellow-worker Investigator were assigned to the investigation of the reports complaining that the two above-named defendants had defrauded them of various sums of money in the construction of residences for G. I.'s and others;

"That it was ascertained the two defendants were operating the Vogue Furniture Company and the Vogue Home Builders Company, with offices in the said Vogue Furniture Company store at Vermont and Santa Barbara Avenues, in said city of Los Angeles, said county and state; that they were offering to build houses for the G. I.'s under the G. I. and F. H. A. government loan, obtaining such loans principally through the Santa Barbara Mutual Building & Loan Association of Santa Barbara, California, through its branch office in Los Angeles, to be handled through the different banks in Los Angeles; that houses for others than G. I.'s were to be built on straight loans; that in all cases the defendants required an advance deposit of the sum of $1,000.00 to be held in trust until the houses were completed, then the said sum was to be used for the purchase of furniture for the houses, such furniture to be supplied to them by the Vogue Furniture Company at wholesale, plus a 25% additional;

"That at the time such reports were made and being investigated, it was ascertained that the defendant Harold Tingley had abandoned and deserted the defendant Jerry Clements and had fled from the justice of the state of California and could not be located.

"Affiant states that he and his co-worker made investigation of a large number of reports from victims who had paid into the hands of the defendants the said One Thousand Dollars and had not had constructed any house, or only partial construction, and had not been returned their money for the non-fulfillment of their contracts; had not been returned to them any part of the said sum, or been furnished any furniture; that such investigation covered a period of several months; that it was ascertained the said firms had gone into bankruptcy;

"That on the 17th day of November, 1947, a Complaint was sworn to before the Judge of the above-entitled court, charging the two defendants with the crime of Grand Theft, in 48 counts, felonies; that upon said complaint a Warrant of Arrest was issued for the defendants and placed in the hands of the sheriff of Los Angeles County for service; that copies of said complaint and Warrant are attached to and made parts of these papers; that the said 48 counts charged in the said complaint does not include all of the cases investigated, nor all of the victims who were defrauded of money by the two defendants.

"Affiant states that the defendant Jerry Clements was thereafter arrested on said Warrant and is now awaiting trial in the courts of Los Angeles; that from information obtained from a reliable source, it was learned the defendant, Harold Tingley, had left the state of California and was taking refuge in the state of Alabama, and on the 20th day of November, 1947, the Chief of the Bureau of Investigation of the office of District Attorney of Los Angeles county, forwarded a letter to the

Sheriff of Birmingham, Alabama, informing him of the existence of said Warrant, inclosing photograph, giving fingerprint classification, and information as to where he might be located· near said city, and requested his arrest and detention for extradition to California;

"That thereafter on· the 24th day of November, 1947, the Chief of said Bureau of Investigation received the following telegram:

Birmingham, Alabama, Nov. 24, 1947
H. L. Stanley,
Chief Bureau of Investigation
Office of District Attorney, LOSA

We are holding Harold Nelson Tingley as per your letter November twentieth Stop A fugitive from justice hearing is set for two o'clock PM December tenth Please be here on that date and time with proper papers to extradite He refuses to waive extradition.

Holt A. McDowell, Sheriff

"That on said 24th day of November, 1947, the District Attorney of Los Angeles County, California, forwarded to said Sheriff a certified copy of the Warrant of Arrest, followed by the following telegram:

LOSA Nov. 24, 1947
Holt A. McDowell,
Sheriff,
Birmingham, Alabama.

"Retel date re arrest of Harold Nelson Tingley. Are preparing extradition papers and expect to be present December tenth. Air-mailing copies of Complaint and Warrant tomorrow. Hold on higher bail than suggested in my letter if possible make it Twenty Five thousand; defrauded victims of about Seventy Five thousand.

W. E. Simpson, District Attorney
By H. L. Stanley, Chief Bureau
Investigation.

"That on the 26th day of November, 1947, the District Attorney of Los Angeles County, received a letter from the said Sheriff stating that the defendant had been released on bail of $10,000.00 on the date of his arrest;

"That on the 28th day of November, 1947, the District Attorney received the following telegram:

Birmingham, Ala. Nov 28, 1947
H. L. Stanley, Chief
Bureau of Investigation
Office of District Attorney, LOSA

Fugitive from justice Warrant Harold Nelson Tingley reset for December seventeenth.

Holt A. McDowell, Sheriff

"Affiant states that the record of the defendant, Harold Tingley, was received from the F. B. I., at Washington, D. C., and revealed that he had been arrested for crimes a number of times, and had served terms of imprisonment in the Colorado State Penitentiary, and the California State Prison at Folsom.

"Affiant states that diligent search was made for the defendant throughout the city of Los Angeles, the county of Los Angeles, and the state of California, but that subsequent to the commission of the crimes with which charged, the defendant left the state of California, fled from the justice thereof, and cannot now be found therein.

"Wherefore, affiant does state, and charges the truth to be, that the defendant, Harold Tingley, is a fugitive from the justice of the State of California, and is now under arrest and awaiting extradition in the city of Birmingham, in the state of Alabama.

"Further affiant sayeth not.

"Frank B. Jemison."

The other affidavit to which we have referred was made by Mrs. Clarence Shatz. She is one of the alleged defrauded parties. Her statement details the transaction and experiences she had with the petitioner.

At the trial below the State introduced Mrs. Laurel L. Childress as a witness. According to her testimony she, too, was a victim of the alleged fraud. Her evidence related to transactions she had with the accused. The statements of each of these witnesses are in accord with the nature and pattern of the complaints about which Mr. Jemison deposed.

 It is clearly apparent that the evirence discloses a meritorious basis for the prosecution under the provisions of the applicable penal code.

The petitioner denied that he was guilty of any fraud. On the contrary, he testified that he became involved in a hazardous business adventure and his plight was the result of financial failure. He disclaimed that he received any monetary benefits from the operation of his building enterprises.

His evidence, in the main, is appropriate and material for a consideration by the courts in the demanding state. We cannot here be concerned with evidence which tends only to establish his innocence of the crime with which he is charged in the state of California.

Much emphasis is placed upon some statements that the proof showed Mr. Robert G. Johnston made at the extradition hearing in the office of the Governor of this State. Added importance is attached because this is the person who made the affidavit upon which the original warrant was predicated.

The statements are: "We don't claim he stole a dime." "If all money lost was paid back the probability is that the cases would be dismissed."

We do not think that the contents of these assertions are of sufficient efficacy to warrant us in holding that this must be decisive of the question of instant concern.

A very similar factual situation arose in the case of In re Faler et al., 144 Kan. 348, 58 P.2d 1119, 1120. The petitioners were charged with fraudulently obtaining fifty shares of preferred stock of the value of $5000.00. The false representations consisted of the claim that petitioners were the owners of a certain oil and gas lease, and that wells had been drilled thereon. These represented facts were not true.

Extradition was sought from the State of Kansas to the State of Oklahoma. It appears that Sadie L. Hummell was the alleged defrauded party. At the hearing before the Governor of Kansas, this person appeared and there stated that the petitioners did not represent to her that the oil and gas lease for which she exchanged her stock was the property of petitioners and that they did not represent to her that wells had been drilled thereon.

In commenting on the significance of this incident the court observed:

"Her testimony or asseverations of whatever sort that she was not swindled as charged in the complaint has not the slightest legal effect upon the validity of that complaint nor on the validity and regularity of the requisition which was issued by the Governor of Oklahoma and honored by the Governor of Kansas. Sadie L. Hummell is not even the prosecuting witness in this case. But if she were, it would not vitiate the requisition. It is not uncommon for prosecuting witnesses to swear to one state of facts and later to repudiate their testimony, or forget, or equivocate, in order to show leniency toward those against whom the solemn machinery of the law has been set in motion. Our reports are laden with familiar instances of that sort. * * * It is said that a writ of habeas corpus should be granted whenever there is no testimony to show that the party arrested is probably guilty of the crime charged. But here there was testimony. There were the recitals of the criminal complaint, positively sworn to before the justice of the peace. The verified complaint served the purpose of showing that a crime had been committed and that the accused were probably the guilty parties."

We are not convinced that the evidence in the instant case satisfies the conclusion that the extradition proceedings were insituted for the purpose denounced by the provisions of Title 15, Sec. 68, Code 1940.

It follows that the judgment of the circuit court is ordered affirmed.

Affirmed.