96 So.2d 178

Harry GAMBRELL

v.

Ray D. BRIDGES, Sheriff.

I Div. 707.

Court of Appeals of Alabama.

Aug. 14, 1956.

Rehearing Denied Nov. 20, 1956.

**6**

Harry Seale, Mobile, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for appellee.

PRICE, Judge.

Appellant appeals from a judgment of the Circuit Court of Mobile County denying his petition for discharge on habeas corpus and remanding him to the custody of the Sheriff of Mobile County to be delivered to the authorized agent of the State of Michigan.

Harry Gambrell was arrested by the Sheriff of Mobile County under a warrant issued by the Governor of Alabama upon a requisition of the Governor of the State of Michigan, the said warrant reciting that Harry Gambrell was charged with "the crime of issuing check without sufficient funds with intent to defraud, as shown by certified copy of complaint and warrant, (a duly certified copy of which complaint and warrant accompanies said requisition) and it appears that said Harry Gambrell has fled from justice in said State and taken refuge in the State of Alabama."

The State offered in evidence, in addition to the rendition warrant, the requisition of the Governor of the State of Michigan and as Exhibit 3, "the accompanying and supporting papers for the Governor of Michigan and, since they are all bound together, I am going to offer them as one exhibit. They include the following: The application for requisition, a certified copy of the complaint, a certified copy of the warrant and various verifications as required by law."

The petitioner objected to the introduction of Exhibit 3 as a whole, because, as is contended in brief, "of its containing the affidavits referred to, because such affidavits were hearsay in nature, that the affidavits contain statements on which the affiants could not be cross examined at the hearing, that the attachment of such affidavits to the Exhibits constituted an effort to take the deposition of the parties without following the proper procedure through the channels of the Circuit Court, that the attached papers were not required to be sent to the State of Alabama for the extradition of the appellant. The objection was overruled and the appellant duly reserved an exception. The appellant then objected separately and specifically to the introduction of each of these affidavits so attached to Exhibit No. 3, relying on the same grounds. * * * There was no objection to the introduction of the application for the requisition, the certified copy of the complaint nor the certified copy of the warrant."

The particular statements objected to are those contained in the affidavit of William J. Braunlich, Jr., prosecuting attorney of Monroe County, Michigan, to the effect "that he has read the above application by him signed and believed all the statements made therein to be true, and that the crime charged is a violation of the laws of the State of Michigan and that he believes the accused party therein named to be now in the State of Alabama."

Also the statements included in an affidavit by Carl M. Savage, President of Savage-Storer Motor Company, to the effect that certain automobiles were sold to the appellant, that a check was tendered by appellant as full payment for the automobiles, that when presented at the bank it was returned without payment, bearing the statement insufficient funds; that previous to this time in the year 1954, the company had had similar sales with appellant; that appellant identified himself as a used car dealer in Tennessee; that the Savage-Storer Company had not received payment on the check; that diligent efforts were made to locate appellant in Tennessee, New York and Mobile and that the interests of Savage-Storer Motor Company, Inc., and his own, is solely to serve the ends of justice, and in no way to recover any civil relief for financial losses sustained.

A further affidavit by Carl M. Savage to the effect that he is the complainant in the prosecution instituted against appellant; that he had read the application for requisition and believed all the statements therein made to be true; that he believed the appellant to be in the State of Alabama; that he desired appellant's return solely for the purpose of public justice, and not to give opportunity for the service of civil process or to compel him to settle or compromise any asserted debt or other private demand.

The affidavit of Howard Williams, Sales Manager of Savage-Storer Motor Company Inc., to the effect that on two occasions in September, 1954, he sold certain automobiles to appellant; that on October 6 1954, he sold to appellant two automobiles for the sum of $1,975 and at said time and place appellant tendered a check in full payment for said automobiles; that certificates of title and bills of sale were executed and delivered to appellant; that appellant represented that sufficient funds to pay said check were on deposit in the bank; that said check was returned bearing the endorsement of the bank that sufficient funds were not on deposit to cover the check.

The affidavit of Charles G. Harrington, Sheriff for the County of Monroe, Michigan to the effect that he has received a communication from the Sheriff's office in Mobile stating that Harry Gambrell was arraigned, charged with being a fugitive on a warrant issued by the Justice Court for the City of Monroe, Michigan, and has refused to waive extradition.

In Tingley v. State, 34 Ala.App. 379, 41 So.2d 276, 277, cert. den. 252 Ala. 520, 41

So.2d 280, there were two supporting affidavits to the application for requisition introduced on the trial. Judge Carr, writing for this court, said: "It is contended that the court should not have allowed these affidavits in evidence. We cannot sustain this position. They were annexed to the application for requisition and became a part of the documents to which the Governor of California certified. In this state of the record, their admissibility was authorized. People ex rel. Gates v. Mulcahy, 392 Ill. 498, 65 N.E.2d 21."

■ Further as to counsel's contention that the affidavits are hearsay testimony; contain statements on which affiants could not be cross examined in court; are attempts to get before the court the testimony of affiants, etc., we call attention to the statements by Mr. Justice Foster in Adams v. State, 253 Ala. 387, 45 So.2d 43, 44, that such affidavits are "not as the testimony of a witness given on the trial but only as justification of the issuance of the warrant", of the Governor of Michigan.

The court's action in overruling petitioner's objections to State's Exhibit 3 was without error.

■ The papers introduced in evidence by the State established a prima facie case for the detention of the petitioner. Godwin v. State, 16 Ala.App. 397, 73 So. 313; State of Tennessee v. Hamilton, 28 Ala.App. 587, 190 So. 306; Barriere v. State, 142 Ala. 72, 39 So. 55. The motion to exclude the State's testimony was properly overruled.

It was appellant's contention at the hearing that his extradition was sought for the purpose of aiding in the collection of a debt, demand or claim against him, contrary to the provisions of Section 68, Title 15, Code 1940.

■ In support of his contention appellant testified that he signed a check dated August (October) 6, 1954, payable to Savage-Storer Motor Company, in the sum of One Thousand Nine Hundred Seventy Five Dollars. The check bore the notation that it was given for the purchase of two cars, but appellant stated this notation was incorrect; that it was his understanding he was to receive four automobiles for the sum evidenced by the check. Two automobiles were bought from Savage-Storer, a '53 Chrysler and a '49 Chevrolet. Two cars, a '47 Chevrolet and a '49 Ford, came from the lot of Harry May's, across the street from Savage-Storer. After he purchased the first two, he asked the Savage Company if he could get two more automobiles. The man at Savage's lot called May's place and appellant then took the telephone and talked to the Manager at May's.

Title papers for two of the automobiles were prepared by Savage-Storer, and by May's for the other two cars, and he got the four automobiles on this one check.

Appellant then introduced in evidence this letter:

"October 18, 1954

"Mr. Harry Gambrell
302 Washington Heights
Pulaski, Tennessee

"Dear Harry:

"Received your letter this morning. I sure was disappointed to receive this letter as I thought I was dealing with a capable and honest businessman. I sure was sadly fooled when I got the mail this morning.

"You bought these cars and gave me a check, which as far as we are concerned was a bonafide deal. As far as I know, the only way a car sold wholesale is warranted is the motor being cracked, transmission, and rear axle, and these were all O.K. on the two cars that we sold you.

"I don't want any excuse except for you to go down and make this check good or we will turn it over to the authorities.

Please let this check go through or mail us a certified check at once.

"Hoping to hear from you immediately.

"Sincerely,

"Harry May & Sons

"Earl G. Althaver."

Appellant testified this transaction was in October, 1954, and that he gave no other check to Savage or May's during that month and had no other transaction with either of them during October.

Appellant further stated that Savage-Storer sold him the automobiles and that they verbally warranted the cars against "busted blocks, cracked rear-ends, leaded transmissions and rear-ends, and things like that." After they were purchased defects were discovered. The 1953 Chrysler had been in an accident; the right front fender had been replaced; it was four inches out of line, had a cracked block about two and a half inches on the right side near the rear, and a cup and a half of lead came out of the transmission when the grease was changed. The appellant had been in the automobile business for approximately ten years and stated that lead is put in the transmission to quiet noise and to keep down the roar and clashing of the gears. The steering housing on the 1949 Tudor Chevrolet was burst. It also had lead in the rear-end and transmission and had been repainted. The 1949 Ford had been wrecked; the head was cracked and the rear-end housing had been broken and welded. The Chevrolet Club Coupe had a cracked head and steering housing, and was out of line four and a half inches. The appellant said he tried to sell the cars at three auctions and then called Savage over the telephone and about a week after that he received the letter from May's and Sons. He also mailed Savage a letter telling what was wrong and saying they could have the cars back if they wanted them. Appellant waited two and a half weeks but nobody showed up.

On cross examination appellant testified when he signed the check he had money in two different banks to cover it. Two of the cars were to come from Savage-Storer and two from May's. He had never before had any dealings with May. At the time the transaction was made Howard Williams, Sales Manager for Savage, the fellow that made out the titles and appellant all had a few drinks. He never inspected the automobiles before he purchased them because it was at night. He sold the cars. He got about $225 for the 1949 Chevrolet, $975 for the Chrysler, $195 for the 1947 Chevrolet and $235 for the 1949 Ford. Approximately $750 of the money was spent for his sick baby. He said there was an arrangement that if there was not enough money in the bank to cover the purchase of the automobiles the check was to remain at the bank until the cars were sold and the check was to be released under his authorization. When he found out about the condition of the cars he sent a telegram to the bank to stop payment of the check. He found out about the condition of the cars on a Monday, and on the 9th, three days after the check was given it was returned by the bank.

Mr. Howard Williams called as a witness by appellant, testified he is Sales Manager for Savage-Storer Motor Company; that he made out the check and appellant signed it; that to his knowledge it was not for the purchase of four automobiles. Harry May's is across the street about 100 yards from Savage. The two firms did not do business together in buying or selling automobiles. May does some of Savage's body shop work and wrecker service. The check did not cover four automobiles. Savage had no automobiles at Harry May's place at that time. The price of the 1953 Chrysler was $1,575 and the 1949 Chevrolet was $400. He did not know the cars were cracked and the Chrysler did not have "New Yorker" on one side and "Windsor" on the other when it left Savage. The company received a letter from appellant. He did not have the letter but it was his recollection he wrote that he had had the Chrysler inspected and was told it was out of line and he had been charged too much; that he would keep the Chevrolet but did not want the Chrysler and did not want to bring it back; It was his understanding Savage answered the letter; that witness signed the complaint against

appellant; that he did not come to Mobile to try to collect the debt.

The witness testified on cross examination that the check was given for the purchase of two automobiles and it had nothing to do with any other automobiles or any other company.

Thereupon appellant testified further that he received all four automobiles for the check, two of which came from May, and later he received the letter from May.

On cross examination appellant stated his brother got the May's automobiles and it was possible that his brother could have given a check for those cars.

The conflict in the evidence was for the trial court to determine. The Judge presiding at the hearing was in position to observe the witnesses and their demeanor on the stand and to give to their testimony such weight as was deemed proper. We are not convinced that his finding was contrary to the great weight or preponderance of the evidence. State v. Lacey, 158 Ala. 16, 48 So. 343; Alvis v. State, 36 Ala.App. 370, 56 So.2d 388.

Affirmed.