320 So.2d 709
**Kimleigh M. BUSEY**

v.

**STATE.**

**6 Div. 950.**

Court of Criminal Appeals of Alabama.

June 30, 1975.

Rehearing Denied July 29, 1975.

Parker & Garrett, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Rosa G. Hamlett, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Appeal from denial of Petition for Writ of Habeas Corpus.

The appellant was indicted for felonious fraud on September 24, 1974, by the grand jury of Bernallillo County, New Mexico. A bench warrant was issued by the judge of the district court of said county on September 27, 1974, for his arrest. On October 7, 1974, an application for the extradition of appellant was made by the Governor of New Mexico. On October 24, 1974, the Governor of Alabama signed the rendition warrant releasing appellant to the State of New Mexico. On February 28, 1975, evidence was taken as to the habeas corpus petition, and the circuit court denied appellant relief.

The appellant, Kimleigh Michael Busey, was called as a witness and testified that he lived in Birmingham, Alabama, and knew Ms. Carol Ann Cox of Albuquerque, New Mexico. Appellant's testimony further stated that he became engaged to be married to Ms. Cox. He admitted that on the evening of December 8, 1973, when they became engaged, he told Ms. Cox that he and a friend were thinking of going into business together and that if they did, they would not have much to live on. After this, Ms. Cox told the appellant that she had some money of her own. On December 10, 1973, Ms. Cox wrote a letter to her stockbroker in New York directing him to sell all her stock commencing January 2, 1974. Appellant was present when Ms. Cox typed the letter and after she signed it, appellant mailed it himself.

On January 7, 1974, Ms. Cox received a check from her stockbroker for a sum just over $11,000.00. Appellant was present that evening when she opened her mail, and the next morning, he went with Ms. Cox to her bank to have a bank draft made out in his name. Appellant further stated that the money was deposited in a bank account in appellant's name in the amount of $10,700.00. He also admitted that the money was to be used for the business he planned with his friend, partly as a down payment on a mobile home for appellant and Ms. Cox, and the rest for an undetermined use. There was no written contract or promissory note relative to this money.

Appellant testified that Ms. Cox's brother-in-law threatened him, and on January 18, 1974, he left New Mexico and came to Alabama. Appellant stated further that Ms. Cox told him that "she was going to take care of that problem," but the next morning he let New Mexico taking all of Ms. Cox's money with him. Appellant was arrested on a warrant in September 1974 by three officers from the Birmingham Police Department accompanied by a Pinkerton agent and the brother-in-law.

Appellant claimed to have talked to Ms. Cox subsequent to the arrest at which time she supposedly told the appellant that the only thing she wanted was her money back, that she didn't want to make any trouble, but that she had to have her money back. After talking to Ms. Cox, the appellant stated that he never saw her again. Appellant spent all of the money that he acquired from Ms. Cox.

I

It was appellant's contention that the extradition proceedings by the State of New Mexico, directly or indirectly, sought to aid in the collection of a debt, demand or claim, and are prohibited by Title 15, § 68, Code of Alabama 1940, which reads as follows:

"Nothing in this chapter shall be construed as authorizing the extradition of any person in this state to any other

state where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited."

Appellant insists that the subsequent conduct of the complainant and her brother-in-law in telephone and personal conversation with appellant have shown satisfaction of a debt, demand or claim to be the intention of the complainant.

We are not convinced that the evidence of the instant case establishes that these extradition proceedings were instituted for the purpose or purposes denounced by the provisions of Title 15, § 68, supra.

The three cases cited by the appellant in support of his position very amply illustrates the law in Alabama in regard to the refusal of extradition when the evidence is such that the proceeding is a method of collection of a debt, demand or claim. However, it is this Court's opinion that these cases can be distinguished from the instant case. In the first case cited by the appellant, *Scott v. State,* 33 Ala.App. 328, 33 So.2d 390 (1948), Presiding Judge Bricken stated:

"Where the governor's warrant recited that accused was charged in Georgia with 'the crime of Misdemeanor (bad check),' and the undisputed evidence disclosed that check was returned with the notation 'Drawn against uncollectible funds,' and that payee has instituted civil or equitable proceedings, which are pending, and has threatened accused with arrest and extradition if money was not promptly paid, and that extradition proceedings were instituted, directly or indirectly, to aid in the collection of such a check, extradition could not be had. . . ."

In the instant case, there is no evidence that civil litigation is pending against the appellant, nor that anyone threatened the appellant that if he did not pay, criminal action and extradition would ensue. It is

difficult to envision that the alleged statement of the complainant could be construed as an agreement to drop criminal charges if the appellant were to repay the money.

The second case cited, *Bishop v. State,* 38 Ala.App. 667, 92 So.2d 323 (1957), is easily distinguishable since the trial court in *Bishop,* supra, refused to admit evidence tending to show that the alleged warrant was for the purpose of collecting a debt in a foreign state. In *Bishop,* supra, Presiding Judge Harwood stated:

"By its rulings the court below precluded this appellant from attempting a showing which, if established to the required degree, would have entitled him to his discharge. His efforts along this line may, or may not, have been meritorious. He at least however was entitled to an attempt to show that the extradition proceedings were in aid of collecting a debt."

The trial court in the instant case did allow the appellant to testify as to proof of his "collection of a debt or claim theory."

The third case cited by the appellant, *Chatham v. State,* 46 Ala.App. 729, 248 So.2d 768 (1971), can also be distinguished from the instant case. In that case Chatham was charged with embezzlement by his former employers. This Court reversed that case and discharged the appellant, stating:

"But upon the whole of the evidence we are compelled to the conclusion that this extradition was sought either directly or indirectly to aid in the collection of a debt demand or claim against the party sought to be extradited and falls within the inhibitition (sic) of Sec. 68, supra."

That case differs from the instant case in that there was testimony from the employers, as complainants, which tended to show that if Chatham were to repay his employers the money he owed them, they in return would not pursue criminal

charges and extradition. The testimony appears as follows:

"A. And we asked him if he could give us some money or rather give us the seventeen hundred, whatever that check was, if he could repay us that because our books should show that we had spent some fifteen or sixteen hundred dollars of our money repairing the house.

.    .    .    .    .    .

"A. We had sort of agreed, he had agreed that he would come back over and straighten out these several jobs that we had and bring us the contracts that he had taken from the office to tell us exactly how much we had to do on the house, whether we had to paint the outside and the inside and what rooms we had to repair and so forth.

"Q. Well, what conversation did you have with him about this warrant for his arrest?

"A. I just _ _ _ I think he was aware of the fact that a warrant had been issued and he asked about it and I _ _ _ and we told him yes.

"Q. And that, you say that's the extent of the conversation?

"A. That's all I can recall, let me say that.

"Q. Did you say anything about what was going to happen to that warrant if he did cooperate with you and come back and straighten these things out?

"A. I don't recall whether we said that or not, no sir.

"Q. You could have but you don't remember, is that it?

"A. I would say off-hand, that if we discussed this, we discussed _ _ _ we talked for several, oh, I'd say 20–30 minutes, that we certainly don't want to see criminal action brought against Mr. Chatham. We don't have any bad feelings between us like that. We, of course, wanted to get the money that was due us and we certainly needed it to find out where we were in several jobs."

In *Chatham,* supra, this Court had substantially stronger testimony than we now have, tending to show that extradition was for the purpose of collecting a debt. The trial judge, hearing the testimony *ore tenus* from the appellant, was in a position to observe the demeanor of the witness and to consider his testimony in light of the fact that the witness had an interest in the outcome of the case. The trial judge was in a better position than we are to determine the credibility to be given the appellant's testimony, and we will not overturn his decision unless it is clearly and palpably erroneous. *Blackwell v. State,* 38 Ala.App. 562, 89 So.2d 228 (1956).

In the case of *Morrison v. State,* 258 Ala. 410, 63 So.2d 346 (1953), the Supreme Court of Alabama found the evidence insufficient to support the claim that the extradition proceeding was instituted for the purpose of aiding in collection of a debt, demand or claim citing the case of *Tingley v. State,* 34 Ala.App. 379, 41 So.2d 276, cert. denied 252 Ala. 520, 41 So.2d 280 (1949).

In *Morrison,* supra, Justice Simpson, speaking for the Court, stated:

"The second insistence, that the purpose of the extradition proceeding was to aid in the collection of a claim against him, is equally untenable. While he did testify that one of the officers who interviewed him with reference to the extradition papers before he was arrested told him in substance that the only thing that was going to keep him out of Georgia would be for him to raise $1,800 he owed on the personal property he was charged with having fraudulently disposed of in violation of the laws of Georgia, this does not suffice within the rule of our cases to show that the party who preferred the charge had done so in order to enforce the collection of the claim against him. . . ."

In *Tingley,* supra, Judge Carr, on the same subject quoted from *In re Faler et al.,* 144 Kan. 348, 58 P.2d 1119, 1120, as follows:

" '. . . It is said that a writ of habeas corpus should be granted whenever there is no testimony to show that the party arrested is probably guilty of the crime charged. But here there was testimony. There were the recitals of the criminal complaint, positively sworn to before the justice of the peace. The verified complaint served the purpose of showing that a crime had been committed and that the accused were probably the guilty parties.' "

In the instant case, the appellant contends his alleged conversation with Ms. Cox was sufficient to prove her purpose or motive for the extradition proceeding was to aid in the collection of the money he owed her. While it may be true that Ms. Cox may have wanted a return of her money, which would be human, there is no evidence that the prosecution or extradition would be abandoned if payment was made. We doubt that she would have had control over a dismissal of the fraud indictment in New Mexico and withdrawal of the Governor's rendition warrant in any event.

The mere expression of a desire on the part of a defrauded person for a return of their money will not be used by this Court as a vehicle of escape for an indictee to evade facing trial. As we review the record, the extradition proceedings for return of the appellant to New Mexico to answer an indictment for fraud are regular and conform to the mandate of Alabama law.

Affirmed.

TYSON, HARRIS, DeCARLO, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

CATES, P. J., not sitting.