LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a denial of appellant’s petition for a writ of habeas corpus, after a submission by the parties on the pleadings and the evidence.
Petitioner had been arrested under a warrant issued by the Governor of Alabama on a requisition of the Governor of Texas. The warrant recited that appellant and another person stood charged with the crime of “misapplication of construction contract trust funds over $250, a felony in violation of Art. 5472e, Tex.Civ.Stat., committed in Texas,” that petitioner was in Texas at the time of the commission of the crime and thereafter fled from the justice of Texas and had taken refuge in Alabama.
At the beginning of the hearing, the State introduced in evidence the warrant of the Governor of Alabama and the requisition of the Governor of Texas, which included as an exhibit copy of an indictment of the grand jury of Rusk County, Texas, returned on March 15, 1978, which charged that on or about October 13,1977, appellant and another person committed a felony particularly alleged therein, which will hereinafter be quoted in pertinent part and discussed in connection with the specific law of Texas proscribing the alleged crime and prescribing the punishment.
After introduction in evidence of the supporting documents, the point was made by *625 petitioner as to whether the evidence showed that he was the same person named in the supporting documents, but such question is not presented on this appeal. After the trial court ruled against appellant on the particular point, petitioner proceeded with his evidence, which consisted of the testimony of the petitioner, the appellant herein.
Appellant testified that he then lived with his wife and three children in Sara-land, Alabama, that he had been living there and working in that region since about the middle of December 1977. He said that prior to that time he was in Texas: that while in Texas he was engaged in the improvement or construction of a residence for a Paul and Marie Peterson, during the months of October and November, 1977. He said he received directly from them, upon the commencement of the work, the sum of ten thousand dollars, one-third of the contract price; another ten thousand dollars when one-half of the work was completed. According to him, the work was never completed, but that ninety percent or more was completed. He said he never received any money from the Petersons in addition to the total of twenty thousand dollars that he had received about the time of the commencement of the last half of the work. The only issue presented on appeal is whether, under all the circumstances shown by the record and the evidence, extradition from Alabama to Texas is inhibited by Ala.Code 1975, § 15-9-48 as follows:
“Nothing in this division shall be construed as authorizing the extradition of any person in this state to any other state where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited.”
The specific testimony of petitioner relied upon by appellant in his brief is as follows:
“Q. Tell us what the Petersons told you or one of them told you when they called, [about the first of December 1977].
“A. That [they] stated that if I didn’t complete the job that they would file charges against me.
“Q. All right. Did they tell you anything else?
“A. Only a few words of threat, probably, but I couldn’t put my finger on the exact words.
“Q. But they did tell you if you didn’t complete the job that they would have you arrested?
“A. Yes.”
Appellant relies largely on cases in Alabama holding that the particular person or persons personally interested in obtaining satisfaction of a debt by defendant were influencing the prosecution of defendant in order directly or indirectly to enforce payment of a debt. Chatham v. State, 46 Ala. App. 729, 248 So.2d 768 (1971); Bishop v. State, 38 Ala.App. 667, 92 So.2d 323 (1957); Scott v. State, 33 Ala.App. 328, 33 So.2d 390 (1948). On the other hand, appellee seeks to distinguish those cases from Busey v. State, 56 Ala.App. 205, 320 So.2d 709, cert. denied 294 Ala. 753, 320 So.2d 713 (1975), in which it was held that the mere expression of a desire on the part of a defrauded person for the arrested person to return her money did not show that extradition proceedings were sought to aid in the collection of a debt, in violation of Ala.Code 1975, § 15-9-48.
The issue raised by the pleadings and the evidence in the instant case is different from the crucial issue in any of the cases relied upon by appellant or by appellee. A transcendent question in the instant case is whether petitioner owed the Petersons anything. True, he had not performed the contract in full, but he lacked only one-tenth of full performance, according to his testimony. There is no indication whatever that the balance of the work could have been performed for less than the ten thousand dollars that the Petersons would have owed appellant if he had fully performed.
To focus more clearly upon the crucial issue in the matter, the language of the indictment and the language of the statute upon which the indictment was based require consideration.
The indictment is in pertinent part as follows:
“[Appellant and another] after having theretofore been paid funds under a construction contract' entered into with Paul Peterson and Marie Peterson for the improvement of specific real property . and while acting as trustees of such construction contract funds not covered by a corporate surety payment bond, did then and there unlawfully, intentionally and knowingly, directly and indirectly and with intent to defraud, retain, use, dis *626 burse, misapply, and otherwise divert said trust funds over the value of $250.00 paid to them ... by the said Paul Peterson and Marie Peterson under said construction contract, without first fully paying and satisfying all obligations of the said trustees ... to Moon Builders Supply of Overton, Texas, mate-rialmen, which were incurred in connection with the construction and improvements, for which said funds were received.” (emphasis supplied)
The applicable provisions of the Texas statute on the subject, Art. 5472e, Tex.Civ. Stat., are as follows:
“Section 1. All moneys or funds paid to a contractor . . . for the purpose of improving such real property which are secured in whole or in part by a lien on the specific property to be improved are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, sub-contractors or mate-rialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; . The contractor, . . . receiving such payments or funds or having control or direction of same, is hereby made and constituted a Trustee of such funds so received or under his control or direction. “Sec. 2. Any Trustee, who shall, directly or indirectly, with intent to defraud, retain, use, disburse, misapply, or otherwise divert, any trust funds, or part thereof, as defined in Section 1 of this Act, without first fully paying and satisfying all obligations of the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, or materialmen, incurred or to be incurred in connection with the construction and improvements, for which said funds were received, shall be deemed to have misapplied said Trust Funds. . Misapplication of Trust Funds hereunder, of the value of $250 or over shall be punished by confinement in the Department of Corrections for a period not exceeding ten years.”
It may well be that under all conceivable circumstances, there is an indebtedness on the part of appellant to the Petersons, but, if so, it is not disclosed by the pleadings or the evidence. The possibility that appellant owed such a large amount to Moon Builders Supply of Overton, Texas, materialmen, incurred in connection with the construction and improvements involved, and that in the final resolution of the matter between the lienor and the lienee, appellant would be indebted to owners of the property is obvious, but the existence of such an indebtedness is not shown.
By taking the stand and testifying as to the conversation between him and the Petersons, it seems clear that petitioner recognized that after the respondent had established by the documents introduced in evidence the prima facie legality of petitioner’s restraint, the burden was then upon him to show that the restraint was illegal. Such is the general rule. Alvis v. State, 36 Ala.App. 370, 56 So.2d 388 (1952); Crayton v. State, 284 Ala. 95, 222 So.2d 351 (1969). Nothing was presented by petitioner to shift the usual burden from him to the State. The evidence would not support a finding of fact that “the extradition proceedings, directly or indirectly, seek [sought] to aid in the collection of any debt, demand or claim against the party sought to be extradited.” The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.