Ex parte JOSEPH OPLE v. GOERGE P. WEINBRENNER, Sheriff.

Ex parte EARL MILLER v. GEORGE WEINBRENNER, Sheriff.

Ex parte LEO CLYNE v. GEORGE P. WEINBRENNER, Sheriff.

In Banc, December 13, 1920.

1. **EXTRADITION: Indictment or Affidavit Necessary.** The Federal statutes relating to the extradition of persons from one state to another to be tried for crime require an indictment or affidavit charging the party to be extradited with a criminal offense in the demanding state, the indictment or affidavit to be sufficient to charge such an offense under the law of that state, and made before a magistrate thereof, and certified to be authentic by its governor; and such indictment or affidavit is indispensable to the issuance of a warrant for the arrest of the accused by the Governor of Missouri.

2. ———: ———: **Sufficient Showing.** Copies of the verified complaints against petitioners accusing them of the murder of a named person in another state, accompanied by the requisitions of the governor of that state for their extradition, and additional affidavits, that the accused are in a certain county in Missouri and fugitives from the justice of the demanding state, are proof, prima-facie, of those facts, and suffice as evidence on which the Governor of Missouri can find the accused are fugitives and honor the requisition of the governor of the demanding state, and, standing alone, are sufficient to prevent the discharge of the accused upon *habeas corpus.*

3. ———: **Habeas Corpus: Return of Officer: Fugitives: Allegations.** It is not the duty of the officer who has arrested the petitioners for a writ of *habeas corpus* and holds them in custody under the authority of the warrants issued by the Governor of Missouri, to allege in his return to the writ either the fact that petitioners are fugitives from the demanding state or the good faith of any of the proceedings, but it is enough for him to set forth facts to show the authority by which he acted; and if his return and the accompanying affidavits and requisition are regular and adequate in law the petitioners will not be discharged, although allegations by them that they were not in the demanding state when the homicide was committed, and that they did not leave said state, and that the proceedings against them there and the requisitions for their return were taken for an unlawful purpose, are not denied by said officer in his return.

4. ———: ———: **Fair Trial: Unlawful Conspiracy: Danger from Mobs: Proof.** Allegations by petitioners for a writ of *habeas corpus* that they have incurred the enmity of a large percentage of the people of the county in the state demanding their extradition, by their participation in industrial controversies in said county, and will be in danger of death or bodily injury at the hands of mobs if taken there, were not proven at the hearing before the Governor in this case, and even if proven they would not justify the courts of this state in ordering their discharge, charged, as they are, with murder in said state. The duty to protect them from violence and to secure them a fair trial rests upon the state demanding their return, and it will be presumed that the duty will be performed.

5. ———: ———: **Fugitive: Right to Hearing: Character of Proof.** An accused person in this state, for whom a requisition for his return to another state has been made by its governor, accompanied by an indictment or affidavit charging him with having committed a crime in said state and with being a fugitive from the justice thereof, and who has been arrested on the warrant of the Governor of Missouri, is entitled to a hearing in a *habeas corpus* proceeding on the question whether he is a fugitive from the

justice of said state, the inquiry being limited to the question whether he was in the state where the crime occurred at the time it occurred. But in order to overcome the prima-facie case made by the regular extradition documents and to require the court to order him to be discharged, the proof that he was not in the state demanding him at the time the crime was committed there must be clear and satisfactory; and where there is substantial testimony that the petitioner was present at the scene of the crime and participated in it, the writ will be denied.

## Habeas Corpus.

Writ denied.

*Mat. J. Holland* and *Charles A. Houts* for petitioners.

(1) The power to return a person from one state to another in which he stands charged with a crime arises solely from Sec. 2, Art. IV, Constitution of the United States. This power can be exercised only when such person shall (a) "be charged in any state with treason, felony or other crime," and (b) "shall flee from justice and be found in another state." So to effectuate the constitutional provision referred to, Congress has enacted Section 5278, Revised Statutes of United States. From the language of the constitutional provision and the said statute, it has been deduced that a person charged with crime can only be extradited if, in fact, he has fled from the state where he stands charged with crime. McNichols v. Pease, 207 U. S. 100; Hyatt v. Corkran, 188 U. S. 691. Section 5278 does not undertake to invest the governor of the asylum state with judicial power to decide whether or not a person charged, is, in fact, a fugitive when that fact is put in issue. Congress could not, if it tried, delegate judicial powers to a purely executive officer. As no other procedure has been provided for determining whether or not one, against whom a requisition has been issued, is, in fact, a fugitive from justice, it has been held that the courts, through *habeas corpus,* may take jurisdiction and determine that question when properly put in issue. McNichols v. Pease, 207 U. S. 100. . The governor of the asylum

state is not required to grant the accused a hearing. Ex parte Pelinski, 213 S. W. (Mo.) 809. But even if the governor of the asylum state does have a hearing and conflictng testimony is produced upon the question, whether or not the accused is a fugitive, nevertheless, the accused, upon *habeas corpus,* is entitled to have the judgment of a court upon that question. McNichols v. Pease, 207 U. S. 100; People ex rel. v. McLaughlin, 145 App. Div. (N. Y.) 513. (2) The replies of the petitioners in these cases charged that the processes of the law have been invoked in these cases, not for the purpose of punishing crime, but for the improper and immoral purpose of placing the petitioners within the power of persons whose enmity they have incurred, of subjecting them to danger of personal violence at the hands of their enemies, and to satisfy the desire for revenge entertained by their enemies. The courts will not allow the laws to be thus prostituted. Ex parte 40 Ohio St. 130. (3) Upon the record the allegations Slauson, 73 Fed. 666; Tenn. v. Jackson, 36 Fed. 258; In re Frank Cannon, 47 Mich. 481; Compton v. Wilder, of the petitioners, (a) that they were not fugitives from Illinois; and (b) that the prosecutions against them in Illinois and the requisition proceedings were instituted for unlawful purposes; stand undenied upon the record. (4) For the purpose of this case, therefore, unless proof is to be taken, it must be assumed that the petitioners were not in the State of Illinois at the time the offense charged against them was committed; that they did not flee from Illinois; and that the prosecutions and the requisition proceedings have been instituted in bad faith. In this situation, under the authorities above referred to, they are entitled to be discharged.

*Alphonso Howe* for respondent.

GOODE, J.—These three cases are original proceedings in this court, begun to obtain the discharge by

writs of *habeas corpus* of the petitioners from the custody of the respondent Weinbrenner, Sheriff of the City of St. Louis, by whom the petitioners were alleged to be unlawfully restrained of their liberty and imprisoned.

The petitions for the writs were filed July 13, 1920. They state in substance that the respondent holds the respective petitioners in custody in order that they may be transported to Madison County, Illinois. by virtue of warrants issued July 7th, by Honorable Wallace Crossley, at that time Acting Governor of the State of Missouri, which warrants recited that the Governor of Illinois had demanded of the Governor of this State said Joseph Ople, Earl Miller and Leo Clyne as fugitives from the justice of the State of Illinois, and had produced to said Wallace Crossley, Acting Governor of Missouri, complaints and affidavits, certified to be authentic, and charging said fugitives with having committed the crime of murder. Wherefore, said Wallace Crossley, Acting Governor of the State of Missouri, commanded the sheriff or marshals of any county of this State to arrest the accused persons and deliver them to Julius C. Blake, agent of the State of Illinois to receive them; also commanded all sheriffs, marshals, constables and police officers to whom the warrants might be shown to assist in the execution of them and to make return on the warrants of their proceedings thereunder. The warrants were duly signed by the Acting Governor and sealed with the great seal of this State, attested by John L. Sullivan, Secretary of State.

The arrest of the prisoners under the executive warrants and their detention are alleged in the proceedings for the writs of *habeas corpus* to be illegal for several reasons, but the only ones relied on and argued for the petitioners are that they were not in the State of Illinois on the 20th day of May, 1920, the date alleged as the date of the commission of the crime of which they are charged, that they are not fugitives from said

285 Mo.—24

State of Illinois, and that the criminal proceedings against them were instituted pursuant to a malicious conspiracy and for an unlawful purpose.

The requisitions issued by the Governor of Illinois on the Governor of Missouri, and the petitions of J. P. Streuber, the State's Attorney of said Madison County, on which those requisitions were based, together with copies of the verified complaints wherein the petitioners were charged with the crime of murder were sufficient in form and substance to justify the Governor, or Acting Governor, of this State, to issue warrants for the arrest of the petitioners and their delivery to the agent or messenger of Illinois appointed to receive them.

The complaints against them were made, one by William O. Cline and one by William F. Martin, both the affiants being of the County of Madison, State of Illinois, and both purporting to prosecute in the name and by the authority of the people of said state; and they were made before J. B. Dale, a justice of the peace of said county, and were to the effect that the petitioners on the 20th day of May, 1920, in said County of Madison, willfully, feloniously and with malice aforethought killed and murdered Clarence W. Turner by shooting him. The complaints are in all particulars sufficient to charge the petitioners with the crime of murder in the first degree in killing said Turner in said County of Madison on the date alleged, and were verified by the oaths of the respective affiants.

The petitions, verified by the affidavit, of J. P. Streuber, which accompained the requisitions from the Governor of Illinois, set forth that Ople, Miller and Clyne stood charged with the crime of murder committed in said County of Madison on said 20th day of May, as shown by the attached copies of the complaints against them; that they had fled from the State of Illinois and were now, as affiant believed, in St. Louis, Missouri, fugitives from the justice of the State of Illinois. The petitions of Streuber prayed that requisitions for

the accused might be issued by the Governor of Illinois to the Governor of Missouri; and that Julius C. Blake of the said County of Madison might be appointed by the Governor of Illinois to go after and return said fugitives to the said County of Madison of the State of Illinois for trial.

The various documents before us are in duplicate, that is to say, the proceedings to procure the extradition of Ople were against him alone, but the proceedings against Miller and Clyne were against them jointly, and in each of the two proceedings the documents are identical except as to the names of the parties and the complaining affiants.

In the returns to our writs of *habeas corpus,* the respondent, Weinbrenner, after saying the three peti-- tioners had been arrested on June 25, 1920, and taken into custody by him by virtue of warrants issued by Division No. 2 of the Court of Criminal Correction of said city of St. Louis, pursuant to an affidavit made in said court, charging the petitioners with the aforesaid murder of Turner, and with having afterwards fled from Illinois, go on to say that while the petitioners were still in such custody, the Govennor of Missouri, on July 7, 1920, issued warrants commanding any sherif" or marshal of the State of Missouri to arrest said prisoners and deliver them to Julius C. Blake, the agent of the State of Illinois to receive them. Copies of said warrants of the Acting Governor of Missouri are attached to the returns.

Respondent further returned that pursuant to said orders of said Division No. 2 of the Court of Criminal Correction of St. Louis, the petitioners were turned over to the jailer of St. Louis to be held in custody subject to the orders of the said court; and that the petitioners were in the custody of the jailer when the writs of *habeas corpus* were served on the respondent.

By way of reply to the returns, the petitioners asserted that although they were in the jail of the City of

St. Louis when the writs of *habeas corpus* were issued, yet, nevertheless, they were in the custody of the respondent as sheriff of said city, and were held by him for delivery to the aforesaid agent of Illinois under the warrants of the Acting Governor of this State. The reply then repeats the several grounds asserted to make the arrest and detention of the petitioners unlawful, and to entitle them to their discharge, which were alleged in the petitions for our writs. An additional averment in the reply is that the requisitions of the Governor of Illinois and the documents which accompanied them and upon which the Acting Governor of Missouri issued his executive warrants, failed to show that any prosecution for the crime of murder was pending against the petitioners, or either of them, in the State of Illinois, and further that no evidence of the pendency of such a prosecution was presented either to the Governor of Illinois, or the Governor, or Acting Governor, of Missouri; further that the requisition proceedings to have the petitioners returned to the State of Illinois were undertaken pursuant to a fraudulent conspiracy of the complaining affiants, Cline and Martin, and others, in order that physical violence might be inflicted on the petitioners when they are taken back to said Madison County, Illinois, and in order that by false and perjured testimony, and by means of biased juries, petitioners may be convicted, ostensibly of the crime with which they are charged, but actually to satisfy the malice of said conspirators.

Before granting warrants for the arrest of the petitioners, the Acting Governor gave them a hearing, at which a considerable volume of testimony was taken, which has been filed here, but without a stipulation that we are to treat it as evidence in these cases. This testimony proved Clarence Turner was killed during the evening of May 20, 1920, between eight-thirty and nine o'clock, and while standing on Washington Avenue, Granite City, Madison County, Illinois, about fifty feet

from the corner of Twenty-third Street. He was killed by shots fired from two automobiles running close together, which turned the corner out of Twenty-third Street into Washington Avenue, and continued along the latter street. A crowd had assembled at and near the corner in consequence of a strike of the employees of a chemical-and-coke factory in Granite City. The testimony goes to show the men in said two automobiles fired from fifteen to twenty shots at the people on the sidewalk as the cars passed, killing Turner and wounding a man named William A. Cline, who is not to be confused with the petitioner, Leo Clyne. Some pickets of the striking employees were stationed about the corner, and would occasionally stop an automobile in the street, but as to whether Turner and William A. Cline were of the picketing force there is no testimony, Positive testimony was given that Ople was in one of the automobiles from which the firing was done, and was driving it. Positive testimony was given, too, that Earl Miller and Leo Clyne fired some shots, but there was testimony equally positive that neither of the petitioners was in Granite City, or in Illinois, when the homicide occurred, and that all of them were in St. Louis, Missouri, at the time.

I. If these cases are to be disposed of without noticing the evidence taken at the hearing accorded by the Acting Governor, no reason has been shown for the discharge of the prisoners; but on the contrary they appear to be lawfully in custody. As we have stated, copies of the verified complaints against them accusing them of the murder of Turner, accompanied the requisitions of the Governor of Illinois for their extradition. Such an affidavit, or in lieu of it an indictment, to show the accused were charged with a crime in Illinois, was indispensable to the issuance of a warrant for their arrest by the Governor, or the Acting Governor, of Missouri. The Federal statutes relating to the extradition of persons from one

*Affidavit or Indictment.*

state to another to be tried for crime require an indictment or an affidavit charging the party to be extradited with a criminal offense in the demanding state, the indictment or affidavit to be sufficient to charge such an offense under the law of that state, and made before a magistrate thereof, and certified to be authentic by its governor or chief magistrate. [U. S. Rev. St. sec. 5278; Ex parte Reggel, 114 U. S. 642; Roberts v. Reilly, 116 U. S. 80; Compton v. Alabama, 214 U. S. 1, 6.] Additional affidavits that the accused were in St. Louis, Missouri, and fugitives from the justice of the State of Illinois, were among the requisition papers, and said affidavits were proof, prima-facie, of those facts and sufficed as evidence on which the Governor of this State could find the petitioners were fugitives as asserted, and honor the requisitions of the Governor of Illinois. That proposition was affirmed by the Supreme Court of the United States in a proceeding where the only proof of the withdrawal after the crime had been committed of the accused from the state demanding his return, was an affidavit to that effect in form and substance like the affidavits to the same effect in the proceedings at bar. [Ex parte Reggel, 114 U. S. 643, 651, et seq.]

For the petitioners it is said their averments or allegations that they were not in Illinois when Turner was killed, and did not leave said state afterwards, and that the criminal proceedings against them there and the requisitions for their return to said state were taken for an unlawful purpose, stand undenied. We answer that it was no duty of the respondent as the officer who had arrested the petitioners and held them in custody under the authority of the warrants issued by the Acting Governor of Missouri, to allege in his returns to our writs of *habeas corpus* either the fact that petitioners were fugitives from Illinois or the good faith of any of the proceedings in question. It was enough for him to set forth facts to show the authority by which he acted, and whether

Undenied Allegations.

his authority was sufficient is a question of law for us to determine. The returns made by him, together with the requisitions of the Governor of Illinois for the extradition of the petitioners, and the affidavits upon which those requisitions were based, are before us, and we find them to be regular and adequate in all respects and must hold they establish the legality of the arrest and detention of the prisoners and of the order for their extradition—a conclusion only to be removed by evidence of the degree of cogency to be hereafter stated that the prisoners were not in Illinois at the time Turner was killed. [Roberts v. Reilly, 116 U. S. 80.]

II. If the testimony given at the Executive hearing is to be considered in passing upon the question of the right of the petitioners to be discharged, we are equally clear they ought not to be, and that, instead, the command of the warrants of the Acting Governor of Missouri should be executed. It was not proved, nor was there evidence tending to prove, the prosecutions instituted against the petitioners in Madison County, Illinois, were the outcome of a conspiracy, or that the requisitions were procured to have the prisoners returned to Illinois for the purpose of subjecting them to mob violence or conviction by perjured testimony and an unfair jury. The petitioners say they have incurred the enmity of a large percentage of the people of Madison County, Illinois, by their participation in the industrial controversies of that county, and will be in danger of death or bodily injury if taken there, and to surrender them to the authority of Illinois will be in violation of the Federal Constitution, by depriving them of the equal protection of the law. Evidence was not adduced to prove the existence of the danger alleged, and if it were proved it would not justify this court in ordering the outright release of these prisoners, charged, as they are, with the crime of murder. The duty to protect them from violence and secure to them a fair trial rests upon the

*Danger of Mobs: Fair Trial.*

officials of the State of Illinois, and we presume it will be performed. The Supreme Court of the United States said in a noted case that "except in an emergency demanding prompt action, the party held in custody by a state, charged with crime against its laws, will be left to stand his trial in the state court, which, it will be assumed, will enforce, as it has the power to do equally with a Federal court, any right asserted under and secured by the supreme law of the land;" further said that it was improper for the courts to inquire into the motives guiding the acts of the governors of the demanding and surrendering states. [Pettibone v. Nichols, 203 U. S. 192.]

III. The chief contention of the petitioners is that they are entitled to the judgment of this court in the present proceeding on the question of fact as to whether or no they are fugitives from the justice of Illinois. It is true the Supreme Court of the United States, whose authority is controlling in cases like those before us, since the construction of the Federal Constitution and Federal Statutes is involved, has decided there may be a judicial inquiry on an application for the writ of *habeas corpus,* when a prisoner has been arrested for extradition, as to whether he was in fact a fugitive from the state demanding him; an inquiry, the answer to which usually, and perhaps in every case, has turned on the further inquiry of whether the accused was in the state where the crime occurred at the time it occurred. This ruling is an interpretation of the act of Congress to enforce the constitutional provision for the return by the respective states of fugitive criminals within their borders. The act is so worded as to provide only for the return to a state of a person who has fled from its justice; language which has been held to mean the accused must have been in the state at the time when the crime was committed and to have left it afterwards; hence, that he was there and has gone into another state is a

*Hearing: Character of Proof.*

condition precedent to his extradition. This was decided in a recent case wherein several other propositions of law were declared which bear on the procedure for returning a fugitive by a state where he has taken refuge, to one where he is charged with the commission of crime. [McNichols v. Pease, 207 U. S. 100.] The point of difficulty is not regarding the right of the accused to a hearing in a *habeas corpus* proceeding on the issue of whether he has fled from the justice of the requisitioning state. The doubt is regarding what degree of proof that the accused is not a fugitive as alleged, suffices to overcome the prima-facie case made by regular extradition documents and to require the court to order him to be discharged from custody, thereby defeating the demand for the extradition. In the present case it is contended for the petitioners that we should weigh the evidence, and if, in our opinion, it preponderates in any degree in favor of the finding that the petitioners were in Missouri and not in Illinois at the time Turner was killed, they should be discharged, a proposition said to be supported by the case of People ex rel. v. McLaughlin, 145 App. Dec. (N. Y.) 513. The question has been before the Supreme Court of the United States several times, and so presented that a rule of general application could have been prescribed had the court thought proper to do so, but none has been prescribed in a precise form. In interpreting the section of the Revised Statutes of the United States (Sec. 1014), which provides for the removal of an alleged offender who has been committed for trial in a Federal district other than where the charge against him is to be tried, to the latter venue, the said Supreme Court has adopted the criterion of "probable cause" as the one by which to determine in a *habeas corpus* proceeding whether the prisoner shall be released or removed. [Tinsley v. Treat, 205 U. S. 201.] But the same measure of proof has not been adopted, at least not explicitly, in cases of interstate extradition. In all the opinions on the

subject rendered by that court which we have read, except one, the prisoners were remanded into custody, and in the one where the prisoner was discharged, he was admitted to have been out of the state of the crime when it was perpetrated. [Hyatt v. Corkran, 188 U. S. 691.] In McNichols v. Pease, 207 U. S. 109, 112, the evidence showed the accused was in another state during a portion of the day when the crime occurred, but failed to show he was away from the state of the offense during that entire day, and the distance between the place where he was shown to be a portion of the time and the scene of the crime could be covered by rail in an hour and a half. The petitioner was refused a discharge. After saying it was incumbent upon the petitioner to overcome the presumption arising from the face of an extradition warrant that he was a fugitive from justice for a crime committed in Wisconsin, the court said a prisoner thus held in custody should not be discharged ''unless it is made *clearly and satisfactorily* to appear that he is not a fugitive,'' etc. (Our italics). See, too, Appleyard v. Massachusetts, 203 U. S. 222.

In the earlier case of Ex parte Reggel, 114 U. S. 653, the court said the prisoner should not be released ''merely because, in the judgment of the court, the evidence as to his being a fugitive from justice was not as full as might properly have been required; or because it was so meagre, as, perhaps, to admit of a conclusion different from that reached by him'' (i. e. the governor who ordered the extradition).

In Munsey v. Clough, 196 U. S. 364, 374, the court said, in substance, that when it was conceded, or proved beyond question, the person was not in the demanding state when the offense was committed, and his return was demanded by reason of a merely constructive presence there, he would be discharged; but he would not be when arrested on a governor's warrant and there was contradictory evidence as to his presence or absence.

We have before us the testimony of two or more witnesses that the plaintiffs were present at the scene

of the crime and participated in the shooting. This is substantial evidence, and though we might consider the testimony preponderated which tended to show they were in St. Louis, Missouri, at the time, we can not affirm that the evidence meets the standard of the Supreme Court of the United States in being clear and satisfactory or so convincing as to admit of no question. We think said court did not mean to decide that a tribunal must be governed in proceedings like these by what it may deem the weight of the evidence, when the testimony is so conflicting that fair and honest men may differ as to where the preponderance falls. The opposite doctrine would diminish the efficacy of the extradition clause of the Constitution and of the statutes enacted to enforce it; a result to be avoided, as was said, in effect, in McNichols v. Pease, 207 U. S. 1. c. 112. Our conclusion is in harmony with a prior decision of this court in Ex parte Pelinski, 213 S. W. 809.

It is ordered that the petitioners be remanded to the custody of respondent, the Sheriff of the City of St. Louis, to be dealt with by him in accordance with the warrants of the Acting Governor of this State heretofore issued.  All concur.