63 So.2d 712

**TINGLEY v. STATE.**

**6 Div. 360.**

Court of Appeals of Alabama.

May 27, 1952.

Rehearing Denied Jan. 13, 1953.

Beddow & Jones, H. L. Anderton and G. Ernest Jones, Jr., all of Birmingham, for appellant.

Si Garrett, Atty. Gen., for the State.

HARWOOD, Judge.

This is an appeal from a judgment of the Circuit Court of Jefferson County denying appellant's discharge in a habeas corpus proceeding.

The appellant was arrested by the Sheriff of Jefferson County pursuant to a rendition warrant issued by the Governor of Alabama at the request of the Governor of California looking toward the extradition of appellant to California.

In his return to the writ the Sheriff of Jefferson County asserted that he was holding the appellant by virtue of the rendition warrant issued by the Governor of Alabama.

The portions of this warrant pertinent to this appeal read as follows:

"Whereas, His Excellency, Earl Warren, Governor of the State of California, by requisition dated the 1st day of May, 1951 has demanded of me, as Governor of the State of Alabama, the surrender of Harold Tingley who, it appears, is charged by complaint and supporting papers, in the county of Los Angeles in said State, with the crime of grand theft—13 cts (a duly certified copy of which complaint and supporting papers accompanies said requisition) and it appearing that said Harold Tingley has fled from Justice in said State and taken refuge in the State of Alabama.

"Now, Therefore, I, Gordon Persons Governor of the State of Alabama, in obedience to the Constitution and

Laws of the United States and the Laws of the State of Alabama, do command you to arrest the said Harold Tingley if he be found within the limits of this State, and to deliver him into the custody of Robert G. Johnston & Douglas Burns the duly authorized Agent (or Agents) of the State of California.

"And of the execution of this warrant you will make due return to me."

At the hearing below there was also introduced the request of the Governor of California addressed to the Governor of Alabama for the extradition of the appellant. The pertinent portions of this request read:

"Whereas, It appears by the annexed application for requisition and copies of Complaint and Supporting Papers which I certify are authentic and duly authenticated in accordance with the laws of the State of California, that under the laws of this State Harold Tingley stands charged with the crime of Grand Theft, 13 cts., committed in the County of Los Angeles in this State and it has been represented and is satisfactorily shown to me that he has fled from the justice of this State, and has taken refuge and is now to be found in the State of Alabama;

"Now, Therefore, Pursuant to the provisions of the Constitution and laws of the United States, in such case made and provided, I do hereby respectfully demand that the said Harold Tingley fugitive from justice, be arrested and secured and delivered to Robert C. Johnston & Douglas Burns who is hereby authorized to receive, convey and transport him to this State, here to be dealt with according to law."

The State further introduced certain allied papers which accompanied the request for extradition made by the Governor of California.

The papers were:

1. The application for requisition addressed to the Governor of California by the District Attorney of California, by A. S. Colgrave, Acting Chief Trial Deputy.

This application for requisition sets forth, among other things, that the appellant here is properly charged in due form under the laws of California with the offense of Grand Theft, 13 cts., a felony, committed in the County of Los Angeles, State of California on or about the 13th day of August 1946, and that the appellant had fled from justice in California, and that the charge was made in good faith and not for the purpose of collecting a debt.

There is further set forth in this application the California Statute allegedly violated, and the California Statutes defining who are magistrates in that State, the same being the Justices of the District Courts of Appeal; the judges of the Superior Court; the judges of the Municipal Court; Justices of the Peace; and Police Magistrates in towns and cities.

This application was sworn to before Harold J. Ostley, County Clerk of Los Angeles County, California.

2, 3. Affidavits made by F. P. O'Donnell, a Deputy Sheriff of Los Angeles County, California, and Robert G. Johnston, Investigator in the office of the District Attorney of Los Angeles County, California, relative to their investigation of complaints made to their respective offices relative to appellant's actions out of which the prosecution against him arose.

5. An affidavit of Charles L. Miller. This affidavit is as follows:

"State of California,

ss.

"County of Los Angeles

"Personally appeared before me, this 26th day of April, 1951, Charles L. Miller, of the County of Los Angeles, State of California, who being first duly sworn, on oath, deposes and says:

"That he is over the age of twenty-one years; that he resides in the County of Los Angeles, said State; that by occupation he is a mechanic; that affiant is a veteran of World War II, that during the summer of 1946, affiant was desirous of having a residence constructed; that a friend referred him to the Vogue Home Build-

ers, that on the 7th or 8th days of August, 1946, affiant called at the office of the said Vogue Home Builders at the office, located in the store of the Vogue Furniture Company at Santa Barbara and Vermont Avenues in the City of Los Angeles, said County and State; that affiant then and there met the defendant, Harold Tingley; that affiant inquired about the building of a house; that the defendant, Harold Tingley, showed affiant the different types of houses Vogue Home Builders were building; that the defendant quoted prices and gave the location of some houses, which were then under construction, and some houses, which were completely built; that the defendant asked affiant to go and look at said houses that the defendant also gave affiant the location of lots which were for sale; that affiant's wife was present at said meeting;

"That the defendant, Tingley, represented that his company was building the houses ten at a time; that as soon as ten houses were finished another ten houses were started; that the defendant could build a house for affiant and his wife under a 100% loan through a G.I. government loan; that affiant would be required to deposit $1,000.00, to be held in trust for the purchase of furniture when the house was completed; that the defendant would sell furniture to affiant at the wholesale price, plus 25%; that the furniture could be used as affiant saw fit, for all of the rooms or for certain rooms; that when the house was nearly completed, an interior decorator would give affiant advice as to the proper kind of furniture to purchase for the different rooms; that the landscaping would be supervised by a landscape artist; that all of said advice and supervision would be furnished by Vogue Home Builders without additional cost.

"Affiant states that he inspected some of the lots in the City of South Gate, which had been listed by the defendant; that affiant chose one; that said lot is located at 2705 Illinois St., in the City of South Gate, said County and State; that affiant has subsequently been informed that the said lot was sold to at least two or three other victims.

"That on the 13th day of August, 1946, affiant again visited the office of said Vogue Home Builders; that affiant met the defendant, Tingley, and informed him that affiant had selected one of the lots; that affiant was informed by the defendant, Tingley, that the price of said lot was $1,835.00; that affiant then and there selected the type of house wanted; that the defendant priced said house at $6,450.00; that the defendant stated to affiant that the defendant would purchase said lot, if, after appraisal, he believed it to be worth the price;

"That the defendant informed affiant that it would be necessary to have a government priority, in order to get building material; that the defendant filled out an application for said priority and affiant signed the same; that on the said 13th day of August, 1946, at the said office affiant signed a contract for the purchase of the said house and lot; that a few days thereafter affiant signed an application for the said government loan:

"That on the said 13th day of August, 1946, affiant delivered to the defendant, Tingley, at the said office, a check in the amount of $1,000.00 drawn on the 47th and Broadway Branch of the Bank of America National Trust and Savings Association, where affiant had an account in and with said bank on said date; that the amount of said check was thereafter deducted from the funds which affiant had on deposit in said bank; that on the 13th day of August, 1946, at the said office, the defendant, Tingley, informed affiant that Vogue Home Builders would use the money to buy the said lot; that during the time that the house was under construction, the title to the said lot would be held by the said Vogue Home Builders;

that when the said loan was obtained, $1,000.00 would be taken out of said loan and held for the purchase of the said furniture.

"Affiant states that thereafter from month to month affiant checked with the defendant, Tingley, to ascertain if the loan had been granted; that the defendant, Tingley, claimed certain difficulties had arisen; that the defendant Tingley, informed affiant that the defendant's partner, one Jerry Clements, was handling all F.H.A. and veteran's loans; that affiant could take up the matter with the said partner; that affiant did visit the said Clements, who informed affiant that $150.00 was being deducted from the said $1,000.00 to pay the expenses and fee of the loan company; that there would be a balance of $850.00 for the purchase of furniture; that neither the defendant, Tingley, nor the said Clements informed affiant of the name of the bank or loan company, which financed said loan; that affiant overheard the name of the Santa Barbara Mutual Building and Loan mentioned in the said office of Vogue Home Builders; that affiant made a phone call to the office of the said Santa Barbara Mutual Building and Loan in Los Angeles, California; that an agent of the said building and loan company informed affiant that an application or first papers had been filed for a loan, but that nothing further had been done;

"That thereafter, affiant attempted to contact either the defendant, Tingley, or the said Clements without success, but did finally talk to the said Clements on the phone; that the said Clements then informed affiant that things did not look so good for the company; that the other fellow had run out on him and left him holding the bag; that he was trying to go ahead and finish the houses; that the said Clements would use the profits on the houses that had been started to pay off the debts of the Company; that the said Clements was going to apply for a new license and form a new company before starting any more houses; that, if affiant wanted his money back, the said Clements would try to sell the said lot and refund affiant's money from the sale of the said lot.

"Affiant states that neither the defendant, Tingley, nor the said Clements have returned to affiant all or any part of the said $1,000.00 which was delivered to the defendant, Tingley, for the purchase of furniture and which was to be held by the said Vogue Home Builders for such purpose; that neither the defendant, Tingley, nor the said Jerry Clements, the said Vogue Home Builders, nor any other person or company has built a house for affiant; that title to the said lot has not been delivered to affiant; that about two and a half years ago affiant received $30.00 from the Referee in Bankruptcy at Los Angeles, California.

"Affiant therefore states and hereby charges that the defendant, Harold Tingley, did, on the 13th day of August, 1946, take, steal and carry away the said $1,000.00, the personal property of this affiant, and did appropriate the same to his own use and purpose and not to the uses and purposes for which the same was entrusted to him.

"That at the time the defendant, Harold Tingley, is charged in the accompanying complaint in Count IV of said complaint, with the crime of Grand Theft, the said defendant was then and there present in the County of Los Angeles, State of California; that the photograph attached to this affidavit is a good likeness and the true photograph of the defendant, Harold Tingley, who did steal said $1,000.00; that as a complainant in said criminal action he is making application for the return of the defendant to the State of California in good faith, for the purpose of punishing him for the offense charged and not for the purpose of the collection of a debt, or for any civil purpose whatsoever; that, if the defendant is returned, neither this application nor the criminal action will be used for any civil purpose, but that

affiant will appear at the trial and give testimony and fully aid in the prosecution of the defendant on said charge.

"/s/ Charles L. Miller

"Subscribed and sworn to before me, this 26th day of April, 1951.
Harold J. Ostly, County Clerk of Los Angeles County, State of California.
By /s/ G. W. Gardner"

6. An affidavit or complaint containing some 13 counts, subscribed and sworn to before Louis W. Kaufman, Judge of the Municipal Court, City of Los Angeles, County of Los Angeles, State of California.

All counts of this affidavit are the same, except as to the named owners of the property, and the amounts allegedly taken. For brevity we will therefore set forth only two of such counts, which are as follows:

"Municipal Court, City of Los Angeles, County of Los Angeles, State of California

"The People of the State of California,
          Plaintiff
Harold Tingley,
          Defendant     Complaint-Criminal

"Personally appeared before me, this 5th day of April, 1951 Edward A. Fink of the County of Los Angeles, who, being first duly sworn on oath, complains and says:

"That on or about the 12th day of December, 1946, at and in the County of Los Angeles, State of California, the crime of Grand Theft, a felony, was committed by Harold Tingley, who at the time and place last aforesaid, did wilfully, unlawfully and feloniously take

"One Thousand Dollars ($1,000.00) in money, lawful money of the United States, the personal property of Joseph A. Leon."

  *    *    *    *    *    *

Count IV

"For a further and separate cause of complaint, being a different offense of the same class of crimes and offenses as the charges set forth in all the preceding counts hereof, complainant further complains and says:

"That on or about the 21st day of August, 1946, at and in the County of Los Angeles, State of California, the crime of Grand Theft, a felony, was committed by Harold Tingley, who, at the time and place last aforesaid, did willfully, unlawfully and feloniously take One Thousand Dollars ($1,000.00) in money, lawful money of the United States, the personal property of Charles L. Miller."

7. The warrant of arrest issued by Louis W. Kaufman, as Judge of the Municipal Court of the City of Los Angeles.

8. A certification of the correctness of the copy of the above complaint and warrant, made by Byron J. Walters, as acting Presiding Judge of the Municipal Court of the City of Los Angeles.

9. A certificate by Harold J. Ostly, County Clerk of the County of Los Angeles and ex officio clerk of the Superior Court of said County, to the effect that Louis W. Kaufman was, at the time of the issuance of the complaint and warrant against this appellant, the duly elected, qualified, and acting judge of the Municipal Court of the City of Los Angeles, and authorized under the laws of California to take oaths, affidavits, and to issue complaints and warrants of arrest; that A. S. Colgrave was deputy district attorney of Los Angeles County; that W. Turney Fox was judge of the Superior Court of Los Angeles County a court of record having a seal, and that full faith and credit are due his acts as such; that he (Ostly) is well acquainted with the handwriting of each of the above named officers and that their respective signatures to the instruments annexed, which he has examined, he verily believes to be true.

10. A statement by W. Turney Fox, Judge of the Superior Court of Los Angeles County that Harold J. Ostly is Clerk of the County of Los Angeles and ex officio Clerk of the Superior Court of said County.

11. A certificate by Frank M. Jordan, Secretary of the State of California to the effect that Harold J. Ostly was at the time

of his subscription Clerk of the County of Los Angeles, and ex officio Clerk of the Superior Court of said County; that W. Turney Fox was at the time of his subscription Judge of the Superior Court of Los Angeles County, and that the seal of the court affixed thereto was genuine.

The above documentary evidence constitutes the State's case.

Objection was interposed by appellant to the introduction of all of the above exhibits, separately and severally, and a motion was made for their exclusion. In the early part of the hearing the court announced it would make the following order:

"The Court: All right. Now, the court will make this order in that regard: That neither side need object to any evidence offered to be introduced and that the Court will consider an objection as being made to any evidence that is introduced, and if it is illegal will consider the objection as having been sustained. That is for the purpose of avoiding the necessity of objections to matters all along, and that if evidence is introduced upon a matter that is immaterial, it will not be—such evidence will not be considered at all and it will be only the legal evidence and evidence of material matters that the Court will consider whether or not objection is made to certain evidence."

The court overruled appellant's motion to exclude the various exhibits, and an exception was reserved to such ruling.

The evidence presented by the appellant in the proceedings below was as follows:

"Mrs. Tingley, the wife of Appellant, testified that she was engaged in the business of building dwellings in Los Angeles, California, during the year 1946 as a partner with Jerry Clements in the partnership firm Vogue Home Builders and that Appellant, Harold Tingley, was an employee of that firm, and as such employee worked as a salesman and also handled the advertising for the firm. The witness testified that the Vogue Home Builders built a home for Joseph A. Leon pursuant to a contract negotiated by Appellant in his capacity as a salesman for the Vogue Home Builders; that Mr. Leon in accordance with the terms of the contract entered into between him and the Vogue Home Builders paid One Thousand and no/100 Dollars ($1,000.00) to the Vogue Home Builders through either the Appellant or her partner, Jerry Clements, at or about the time the contract was negotiated, all of which money was actually received by the Vogue Home Builders and deposited to its account in the bank. She testified that Mr. Tingley did not conduct any business whatsoever of his own with Mr. Leon, and that the money received by Harold Tingley from Irvin S. Boxman, Howard R. Stewart, Charles L. Miller, Harry C. Moran, Millard R. Williams, Virginia M. Walthall, George R. Plaster, Ronald F. Wilson, Vance Hongola, and Laurel L. Childress, was also paid to Mr. Tingley as the agent for the Vogue Home Builders and was paid into the partnership firm by Mr. Tingley, the Appellant, and was deposited to the account of the Vogue Home Builders in the bank. She further testified that the money alleged to have been paid by Edward A. Fink to Appellant was actually paid to Jerry Clements but was paid into the business and was received by the Vogue Home Builders and was deposited in the bank account by the Vogue Home Builders. The witness further testified that Mr. Fink proved his claim for the money paid to the partnership in the bankruptcy proceedings of the partnership and compromised his claim in the bankrupt court for One Hundred Twenty-two and no/100 Dollars ($122.00). According to the witness, the money paid to the Vogue Home Builders by each of the above named persons, being every person named in the complaint filed in the Municipal Court of the City of Los Angeles containing 13 counts, and being the basis for the issuance of the warrant of arrest for Appellant out of the Municipal Court of Los Angeles, State of California, was paid to the

Vogue Home Builders pursuant to a contract.

"Mrs. Tingley testified further that Jerry Clements was indicted along with Harold Tingley, the Appellant and Petitioner, and was arrested under the indictment and appeared in Court in California and that his case was nol prossed.

"She testified that she had a conversation with the affiant, Robert C. Johnson, in the Governor's office in Montgomery, Alabama, at the time of the hearing in connection with the extradition proceeding and that he said that if the claim were paid there would be no reason for holding Appellant and also stated:

" 'We do not say that Harold Tingley took one dime.'

"The witness testified that at the time these statements were made by the affiant, Robert G. Johnson, he was acting as the agent of Governor of the State of California and was present at the hearing in connection with the extradition proceeding against Appellant and was in the presence of Dr. Glenn Tingley, Appellant's brother, H. L. Anderton, Appellant's attorney, Mr. McQueen and the Governor's representative. Witness further testified that the affiant, Fink, was one of the petitioners in the voluntary bankruptcy proceeding against the Vogue Home Builders. She testified that a letter was received from Laurel Lee Childress wherein it was stated:

" 'In dollars, we have lost one thousand—and have received nothing out of bankruptcy or otherwise.

" 'The only thing it would cost you for my signature in Harold's behalf is the return of my money.

"Sincerely,

"Laurel Lee Childress.' "

"According to Mrs. Tingley's testimony as a witness for the appellant the credit of the Vogue Furniture Company, Inc., a corporation, was made available to the partnership in financing the purchase of lots upon which the partnership contracted to build houses for the reason that the Vogue Furniture Company, Inc., a corporation, had more assets and had been engaged in business for a longer period of time. Appellant was a stockholder of the corporation, but no checks could be drawn on the corporation bank account without the signature of Jerry Clements. Witness testified that she and Jerry Clements managed the finances of both the partnership firm and of the corporation. The involuntary petition in bankruptcy was first filed against the Vogue Furniture Company, Inc., and thereafter the Vogue Home Builders, a partnership firm composed of Jerry Clements and Doris Tingley, was thrown into bankruptcy several weeks later. The involuntary petition in bankruptcy against the corporation was filed June 24, 1947. The petitioner Harold Tingley came to Alabama in May, 1947. The only connection between the Vogue Home Builders, a partnership, and the Vogue Furniture Company, Inc., a corporation, was in so far as the Vogue Furniture Company, a corporation, financed lots for the Vogue Home Builders. Persons purchasing lots upon which a home was to be built by the Vogue Home Builders were required to make a down payment of One Thousand and No/100 Dollars ($1,000.00) and in many cases the lots purchased would cost more than the down payment, in which case the Vogue Furniture Company would lend its credit in financing the balance.

"According to the further testimony of Mrs. Tingley, the partnership, Vogue Home Builders, contracted to build 105 houses and completed 85 of those, leaving 20 houses uncompleted, the completion of which was rendered impossible by the involuntary bankruptcy proceedings. She testified that the partnership firm was organized in the early part of 1946 and began entering contracts for the construction of homes, which contracts were made on a basis of current cost of labor and

material prevailing at the time the contracts were entered into; that because of the unforeseen increase in the cost of construction in the vicinity of Los Angeles, the houses they contracted to build could not be constructed for the contract price and the company ran into very serious financial difficulties. According to Mrs. Tingley, the seriousness of the financial condition was not realized until a certified public accountant was employed to audit the books for income tax purposes, at which time, when the Vogue Furniture Company, Inc., a corporation, was going through a seasonal slump and was losing money, they were informed the Vogue Furniture Company, Inc., a corporation, was practically broke.

"Mr. N. E. Tingley, father of Appellant, a qualified appraiser of real estate for the Veterans Administration in the vicinity of Los Angeles, California, testified relative to the terrific increase in construction cost in the locality where the Vogue Home Builders was engaged in business between April, 1946, and October, 1947.

"According to Mr. Tingley he called upon Mr. Loggan Lindsey, the district attorney in Los Angeles, California, after the commencement of the extradition proceedings against his son, the Appellant, at which time the district attorney said to him:

" 'Well, Mr. Tingley, we know Jerry and Harold didn't get a dime out of it. If he had only lost $10,000 or $12,000 we wouldn't be interested, but when it got into large sums like this we got to put a stop to it somewhere.'

"And further, after Mr. Tingley had stated:

" 'Suppose I could go out and pay the claims off,' Mr. Tingley stated the district attorney also said:

" 'I can't make a deal with you, you (they) are only our witnesses and if they voluntarily came in and said they had no further claim I would scratch them off as my witnesses.'

"Reverend Glenn V. Tingley testified that he was present at the extradition hearing at the Governor's office in Montgomery, Alabama, at which time Mr. Robert G. Johnson was also present in his capacity as agent for the State of California. He testified that Mr. Johnson stated at that time:

" 'We don't say Harold Tingley stole one dime. We don't contend that.'

"And also:

" 'It is what we call a constructive crime, money given over on a contract, and there is an element of trust although there is no statement of sum— of trust in the contract and there is a failure of business; the money is gone and somebody is to be held accountable for it. Now that is the fix your brother is in. He is to be accountable for it.'

"Reverend Tingley also testified after Mr. Johnson had come to the State of Alabama for the purpose of the extradition proceedings against the Appellant, he, Mr. Johnson, stated to him at this witness' home:

" 'Well, why can't you get up $10,-000 and we will settle a lot of these claims and wash this matter up;'

"to which witness testified he replied:

" 'It is impossible to get up $10,000; we haven't got it and we can't do it;' "whereupon Mr. Johnson then stated:

" 'Well, get $5,000 and then we can undoubtedly take care of them and wash this matter out and there will be no complaint.'

"Reverend Tingley testified that, at the hearing before the Governor's representative in Montgomery, Mr. Johnson also stated:

" 'The district attorney would be inclined to drop the proceedings if there was a settlement of it.'

"H. L. Anderton testified that he represented Appellant as his attorney at the proceedings before the Governor's representative in Montgomery, testified about by Reverend Glenn V. Tingley; testified that he wrote down

674

parts of the statements made by Mr. Johnson at the hearing, who at the time was acting as the agent for the State of California. According to the witness, Mr. Johnson stated during the hearing:

"'We don't claim he stole a dime. If what money was lost was paid back the probability is that the case would be dismissed.'"

In their brief counsel for appellant have set forth three issues to be decided in this appeal. We are in accord with counsel's statement of these issues, and they are as follows:

"1. Is the rendition warrant issued by the Governor of the State of Alabama, made the sole justification for Appellant's detention in the return of the Respondent filed in said cause, void because of the failure therein to state on its face jurisdictional facts authorizing its issuance?"

■ In the recent case of Harris v. State, 60 So.2d 266,[1] our Supreme Court held that where the allied papers introduced on the trial show on their face that they are in due and legal form, and that such papers satisfy the jurisdictional requirements for issuance of the rendition warrant, then such defects as may infect the rendition warrant may thereby be cured. The allied papers introduced below show this appellant to be charged by complaint or affidavit sworn to before an authorized magistrate and a warrant of arrest issued by the magistrate pursuant to such complaint. Such evidence fully supports the validity of the rendition warrant for the detention of the appellant.

"2. Did the papers and documents accompanying the demand of the Governor of the State of California comply with the applicable provisions of law."

Under this issue appellant's counsel argues first that it "appears on the face of the requisition to the Governor of Alabama that the Governor of the State of California did not certify to the correctness or truthfulness of the statements contained in any of the accompanying papers. And it is apparent on the face of the requisition that the Governor of California did not certify that 'Grand Theft, 13 cts.' is a crime in the State of California or that appellant is charged with the crime of 'Grand Theft, 13 cts.'"

■ The request for requisition made by the Governor of California states specifically "that under the laws of this State Harold Tingley stands charged with the crime of Grand Theft, 13 cts." This substantially states that grand theft is a crime under the laws of California, and that Tingley stands charged with that offense. The Governor of California could not certify to truthfulness of the charges made, this being a matter for determination solely by trial on the charges. The allied papers accompanying the request for requisition by the Governor of California fully met the requirements of our statute. Sec. 52, Title 15, Code of Alabama 1940.

Secondly, appellant's counsel argues that the complaint charges no offense, since it does not charge any asportation, but merely that the appellant "did wilfully, unlawfully and feloniously take one thousand dollars ($1,000.00) in money," etc.; and that since no law of California was proven at the trial below, we must presume the law of California to be the same as the law of Alabama, under which the complaint would be defective.

■ It is true under the conflict of laws rules established by our decisions the presumption is indulged, where the laws of a sister state are not pleaded and proven, that the law of such sister state is the common law, if such sister state is of common origin with Alabama, and if not of common origin with Alabama, but acquired by purchase from Spain or France, the presumption is that the law of such sister state is the same as the law of Alabama, including its statutory law. See Louisville & Nashville Railroad Co. v. Outlaw, ante, p. 278, 60 So.2d 367, for full discussion as to such presumption.

We do not see however that such presumptive rules are called into operation in this case.

In Ex parte Reggel, 114 U.S. 642, 5 S.Ct. 1148, 29 L.Ed. 250, it is stated: "Each state has the right to prescribe the forms of pleading and process to be observed in [its] courts, in both civil and criminal cases, subject only to those provisions of the national constitution designed for the protection of life, liberty, and property in all the states of the Union; consequently, in a case involving the surrender, under the act of congress, of a fugitive from justice, it may not be objected that the indictment is not framed according to the technical rules of criminal pleading, if it conforms substantially to the laws of the demanding state." The same principle is applicable whether the charge be by indictment or by affidavit. People ex rel. McCline v. Meyering, 356 Ill. 210, 190 N. E. 261.

■ Furthermore, as used in the constitution and laws pertaining to the extradition of persons charged with crime, "crime" means any offense indictable by the laws of a state demanding surrender of a fugitive, and is not limited to common law crimes. Kentucky v. Dennison, 24 How. 66, 65 U.S. 66, 16 L.Ed. 717; Ex parte Reggel, supra.

In the proceedings below the documentary evidence introduced by the State shows on its face that this appellant was charged by affidavit sworn to before a magistrate with a crime under the laws of California.

■ The district attorney of Los Angeles County, California, in his request for requisition made to the Governor of California states that the appellant is properly charged in due form, in accordance with the laws of California with the crime of Grand Theft, 13 cts. This requisition was sworn to before Harold Ostly, County Clerk of Los Angeles County. The Governor of California duly authenticated this request for requisition and it accompanied the request for extradition. It thus becomes a part of this record. Tingley v. State, 34 Ala.App. 379, 41 So.2d 276.

■■ This was sufficient to make out a prima facie case for denial of appellant's petition. The burden was then upon the appellant to establish that he was not prop-

erly charged under the laws of California. Ex parte Pelinski, Mo., 213 S.W. 809; State v. Currie, 174 Ala. 1, 56 So. 735; State v. Currie, 2 Ala.App. 251, 56 So. 736. This the appellant has failed to do.

"3. Are the extradition proceedings being used to aid in or accomplish the collection of a debt either directly or indirectly?"

This same point was considered by us in Tingley v. State, 34 Ala.App. 379, 41 So.2d 276, supra, and decided adversely to appellant. Mrs. Tingley, Reverend Glenn Tingley, and Mr. Anderton appeared as additional witnesses in this hearing. Their testimony tends to establish that this proceeding was instituted to aid directly or indirectly in the collection of a debt. In this aspect it is contradictory of the State's case.

There were positive statements in the request for requisition of the District Attorney of Los Angeles County, in the affidavit of Charles L. Miller, one of the complainants, to the effect that the prosecution in California was instituted in good faith, and not to aid in the collection of a debt.

■ A defendant will not be discharged in habeas corpus proceedings seeking his release from arrest from a governor's rendition warrant merely because the evidence is contradictory. Munsey v. Clough, 196 U.S. 364, at page 372, 25 S.Ct. 282, 49 L. Ed. 515; furthermore, the courts have almost uniformly refused to overrule the Governor's decision even though a preponderance of the evidence is in accused's favor. Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497; Ople v. Weinbrenner, 285 Mo. 365, 226 S.W. 256; State ex rel. Liimatainen v. Boekenoogen, 140 Minn. 120, 167 N.W. 301; Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193; Ex parte Reggel, supra. See also 16 Va.L.R. p. 829.

■ There was evidence presented below justifying the finding by the Governor of Alabama at the extradition hearing, and of the lower court in the trial of the habeas corpus proceedings, as evidenced by their conclusions, that this proceeding

was brought in good faith and not for the purpose of collecting a debt. No basis exists for our disturbing this conclusion.

Affirmed.

PRICE, J., recuses self.

