207 So.2d 119

**Bryan HOLCOMB, Jr.**

v.

**STATE.**

**8 Div. 135.**

Court of Appeals of Alabama.

Nov. 21, 1967.

Rehearing Denied Dec. 19, 1967.

Martinson, Manning & Martinson, Huntsville, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

This is an appeal from the Circuit Court of Madison County, Alabama, denying appellant's petition for release from custody on a writ of habeas corpus.

Appellant is charged with the crime of "Robbery by Intimidation" under a Georgia statute, and he was arrested by the Sheriff of Madison County, Alabama, upon a duly certified and authenticated interstate rendition warrant issued by the Governor of Alabama. Attached thereto is a requisition, duly authorized and authenticated, of the Governor of Georgia; an authenticated copy of a grand jury indictment against appellant by the grand jury of DeKalb County, Georgia; and affidavits of Mrs. Mary Kisling, employee of the grocery store allegedly robbed, and Mr. Donald Carpenter, manager of said grocery store. Both affidavits identified appellant from a photograph as the individual who robbed their store. There was also attached a sworn certificate acknowledging that the persons who signed the attached papers were actually Richard Bell, Solicitor General of Stone Mountain Judicial Circuit (Georgia) and William T. Dean, Judge of Superior Court, Stone Mountain Circuit (Georgia). No attack was made on the validity of the extradition papers, and we observe that these papers were legally sufficient.

Appellant presented the testimony of his mother, his sister, eight witnesses and testified in his own behalf. He relied on these witnesses to attempt to prove that he was not a fugitive from justice.

Mr. Louis Swinea testified that he was shop foreman of Curry Motor Co. in Huntsville, Alabama; that he knew appellant by having worked on his car; that he saw appellant on the date of the robbery, December 12, 1966, at 8:00 A.M., just before noon and again between 4:30 and 5:00 P.M. At that time appellant had his car in the shop because of an oil leak. An invoice of this occurrence was attached to the record as petitioner's Exhibit No. 2.

Mrs. Ann Cagle testified on behalf of appellant that she lives in the trailer park operated by appellant and his mother; that she has known appellant for about two years; that she spoke with him on December 12, 1966, "between 4:00 and 5:00 o'clock"; that she remembered the date because that was the day she changed jobs; that she saw appellant "in the office" at the trailer park; and that she spoke with him about her change of jobs. Mrs. Cagle also stated that she did not know of any periods in December of 1966 when appellant was not working on the lot; that she was related to appellant by marriage (a cousin); and that she had voluntarily gone to appellant's mother to state that she had seen appellant on December 12, 1966.

Mr. Lee Cagle, second cousin of appellant, testified that he saw appellant on December 12, 1966, at 10:00 A.M. and between 4:00 and 5:00 P.M.; that he and appellant tried to light a heater in the utility room at

the trailer park in the morning; and that he saw appellant in his office talking with his (the witnesses') wife that afternoon.

Mr. Tipton L. Bell testified that he and his brother operated Bell Brothers Shell Service Station; that he had associated with appellant on a "social and business" basis; and that he (the witness) kept a record of purchases made at his station by a ticket and ledger. Tickets for gasoline allegedly purchased by appellant for December, 1966 were offered into evidence as Petitioner's Exhibit No. 4, and a ticket dated December 13, 1966, showed a purchase of eighteen gallons of gasoline.

Mr. James Patterson testified that he saw appellant on December 12, 1966, at his (the witnesses') trailer, at about 6:40 P.M.; that appellant brought to the witness a letter from a man to whom the witness had sold a trailer; that he saw appellant at 8:00 P.M. on December 12, 1966, when he (the witness) asked for the address of the man who had written the letter received by the witness earlier. Mr. Patterson stated that he knew of no time during December, 1966, when appellant was away.

Mrs. Jean McAllister testified that she saw appellant on the trailer lot at "about 9:00 or 9:30 A.M. on December 12, 1966, where she had a conversation with him about her station wagon. The reason she can be positive as to the date was because she had to pay off a claim for damage done when someone hit her car.

Mr. James Johnson testified that he saw appellant at about 9:30 A.M. on December 12, 1966, and borrowed some money from him at that time. Mrs. W. E. Hodges testified that she saw appellant on December 12 between 1:00 and 1:30 P.M. in the trailer park office.

Mrs. Elaine Parker, sister of appellant, testified that she saw him between 8:00 and 8:15 A.M., again at noon, and again at about 3:00 or 3:30 P.M.

Appellant's mother, Mrs. Mamie Holcomb, testified that she spoke with appellant on Monday, December 12, 1966, concerning non-payment of rent by Mr. Robert Hill. Having found the rent had been paid, Mrs. Holcomb signed a check dated December 12 reimbursing Mr. Hill.

On cross-examination, Mrs. Holcomb stated that she had not solicited any testimony from the witnesses. Testimony was also elicited that appellant had been in the Federal Correction Institute in Tallahassee, Florida, and in a Federal Prison in Montgomery, Alabama.

Testifying in his own behalf, appellant stated that he not only had not been in Atlanta on December 12, 1966, but had not been in the State of Georgia on that date. He corroborated the testimony of the witnesses who had testified in his behalf. He also stated on cross-examination that he knew James Davis, alias James Depelno, and had been arrested with him in Nashville in March but said he did not know that Davis was "already in the state penitentiary in Atlanta, Georgia for the offense of robbing this store in Georgia."

Mr. Donald Carpenter testified for the State that he was the manager of the Kroger Store in Atlanta, Georgia; that he recognized appellant as being in his store on the date in question and he identified appellant from the witness stand. On cross-examination, Mr. Carpenter stated that he saw appellant at about 3:00 P.M. when he (appellant) placed a note before him which read, "This is a hold up". He then described the robbery in detail.

Mrs. Mary Kisling, an employee of the Kroger Store in Atlanta, Georgia, described the robbery and identified appellant as the robber. Mrs. Gladys Blasingame of the Kroger Store also identified appellant as the robber.

Code of Alabama, 1940, Tit. 15, Sec. 67, states as follows:

"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for

extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

■ The guilt or innocence of appellant was not here at issue, only whether he was in fact the person named in the extradition papers. Our position is stated most accurately in Tucker v. State, 34 Ala.App. 477, 41 So.2d 625, as follows:

"We of course are not here concerned with the guilt or innocence of the petitioners but only with their extraditable status. The evidence in our opinion being sufficient to establish this, the judgment and decree of the lower court should not be disturbed."

We share the opinion of the court in Tucker, supra, that the recitals in these warrants would be treated as "prima facie evidence of the facts therein stated". Therefore, the extradition papers, along with the supporting warrants introduced into evidence, were sufficient "prima facie to justify the respondent's detention of the petitioner". State v. Freeman, 42 Ala.App. 240, 160 So. 2d 12; Aildio v. State, 42 Ala.App. 653, 177 So.2d 107.

In the case of Tingley v. State, 36 Ala. App. 665, 63 So.2d 712, this court stated through Harwood, J., now Justice of the Supreme Court of Alabama, as follows:

"A defendant will not be discharged in habeas corpus proceedings seeking his release from arrest from a governor's rendition warrant merely because the evidence is contradictory. Munsey v.

Clough, 196 U.S. 364, at page 372, 25 S. Ct. 282, 49 L.Ed. 515; furthermore, the courts have almost uniformly refused to overrule the Governor's decision even though a preponderance of the evidence is in accused's favor. Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497; Ople v. Weinbrenner, 285 Mo. 365, 226 S.W. 256; State ex rel. Liimatainen v. Boekenoogen, 140 Minn. 120, 167 N.W. 301; Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193; Ex parte Reggel, supra [114 U.S. 642, 5 S. Ct. 1148, 29 L.Ed. 250.] See also 16 Va. L.R. p. 829."

See also State v. Parrish, 242 Ala. 7, 5 So.2d 828.

The case of Stinson v. State, 279 Ala. 691, 188 So.2d 287, states in part as follows:

"The writ of habeas corpus is concerned solely with the lawfulness of the present holding of the petitioner. Adams v. State, 30 Ala.App. 487, 8 So.2d 219."

■ Thus, appellant did in effect admit to being that person named in the extradition papers, though contending that he was erroneously named therein. His contention that he has proven his innocence, thus making the extradition proceedings improper, is not well founded. The hearing on this writ of habeas corpus was to determine whether the "body" therein named was actually Bryan Holcomb, Jr., (appellant) and we feel that this fact was adequately established. The guilt or innocence of appellant must be determined by the Georgia courts.

The judgment in this cause is, therefore, due to be and the same is hereby

Affirmed.